## No. 9799.

### THE STATE OF LOUISIANA vs. EMANUEL DREIFUS.

38  877
49   20

38  877
50 1188

38  877
152 1463

38  877
115  777

1. There is an essential difference between a judicial and non-judicial oath. A judicial oath is one taken before an officer in open court; and a non-judicial oath is one taken before an officer *ex parte*, or out of court.

2. In case perjury is assigned on a judicial oath, it is sufficient that the person acting is one of a *class* of officers having *prima facie* authority, and does administer the oath with due formality and solemnity, in the presence of the court, it having jurisdiction of the proceedings.

3. In case perjury is assigned on a non-judicial oath, it is insufficient to maintain a conviction, if the person administering the oath was not legally authorized to administer *that particular oath.*

4. Being sworn by a clerk, in the presence of the court, is being sworn by the court; and an oath administered by an officer, though incompetent, in presence of the court, is regarded as administered by the court.

5. The power to administer an oath is a ministerial one.

6. This Court has no power to pass upon and decide whether there was a variance between the proof administered and the indictment when presented in connection with a motion for new trial for the first time.

7. An objection that witnesses who testified at, or jurors who sat upon the case, were sworn by an officer without any legal authority to administer an oath, comes too late after verdict against the accused; and objection to same cannot be entertained for the *first* time on application for a new trial.

State vs. Dreifus.

APPEAL from the Criminal District Court for the Parish of Orleans. *Baker*, J.

M. J. *Cunningham*, Attorney General, and *Lionel Adams*, District Attorney, for the State, Appellee:

1. If an officer is not competent to administer an oath in a criminal trial, objections should have been made at the time witnesses or jurors were offered to be sworn by such officer. An accused will not be permitted to take the chances of an acquittal and failing of success secure a new trial by deferring action as to such officer's incompetency until after conviction. 36 Ann. 206; 37 Ann. 215; 36 Ann. 864; Whar. Cr. P. and P. 801, 804, 876, 877.

2. A minute clerk of the Criminal District Court of Orleans parish is a deputy clerk, and as such is competent to administer an oath in the presence of and under the direction of the Court. Act 30 of 1880; Act 130 of 1880.

3. Act 30 of 1880, does not create a new office. It confers no powers with reference to the minute clerk but regulates the duties of that officer whose pre-existing powers are recognized by the act.

4. Administering an oath calls not for the exercise of either judgment or discretion. It is a mere formality, hence it is a ministerial act. High Ext. a Leg. Rem. § 81.

5. A deputy clerk may act for his principal in the performance of all ministerial acts. He is an officer known to the law. 15 L. 41; 3 Ann 247; 27 Ann, 507; 10 M. 48; C. P. 782;

6. An oath administered by a deputy clerk in the actual presence of the court and under his direction is valid. 7th Circ. (Mich.) 1845, U. S. vs Nichols, 4 McLean, 23.

7. The power to administer oaths is conferred upon deputies in C. P. 782; secs. 3 and 12 of Act 56 of 1855; secs. R. S. 462, 483 and 2550; Act 78 of 1868, and the last clause of Act 30 of 1880; see Gerald vs. Gerald, dissenting opinion of Justice Slidell. 5 Ann. 246.

8. Where the power to administer oaths by deputy clerks has been recognized with judicial unanimity from the organization of our government unto the present day, the maxim " *Communis error facit jus*," is applicable.

*C. H. Luzenberg* and *Morris Marks* for Defendant and Appellant:

Authority to administer an oath is a judicial function. State vs. McCroskey.

Authority to administer an oath is a material allegation in an indictment for perjury or subornation of perjury, and the administration must be proved as alleged. 2 Russ on Cr. P.; Morrell vs. People, 32 Ill. p. 502; 3 McCord, 308.

In prosecutions for perjury or subornation of perjury, the party charged with the perjury must be lawfully sworn. 3 Inst. 166; 1 Johns, R. 498; 9 Cowen, R. 30; 3 McCord, R. 308; 4 McCord, R. 165: 2 Russ on Cr., 520; 3 Carr & Payne, 419; S. C., 14 Eng. Com. Law. Rep. 376; 2 Chitt. Cr. Law, 304; 4 Hanks, 182; 1 N. and M., 546; 3 McCord, 308; 2 Hayw., 56; 8 Pick., 453; Bouvier's Law Dict, verb Perjury, 331; Wendell's Blackstone, vol. 4, 137; Cr. C. C. (7th ed.) 626; 3 Camp. 432; Wood's Inst. 435.

Authority to administer an oath is an express delegation of authority and cannot be exceeded or delegated to another. Rex. vs. Mary Hanks, 3 Carr and Payne, 419; U. S. vs. Curtis, 107; U. S. R. 671; Sandeman vs. Deake and Willard, 17 La. 203; Regina vs. Hallett, 5 Cox's Criminal Cases, 238; Stewart vs. State, 6 Texas Court of Appeal, 184; Rex vs. Punshon, 3 Camp., 96; McGragor vs. State, 1 Ind. R. 232.

" Practice cannot give authority to administer an oath." Rex. vs. Verelst, Esq., 3 Campbell's R., p. 432; Regina vs. Henry Marshall Stone, English Law and Equity Reports, XXII, p. 593.

In this State no one is authorized to administer an oath except those to whom the power has been expressly delegated. R. S. sec. 1936, as to district judges; secs. 462, 483, 498, 488 (parish of Orleans excepted), as to clerks of district courts; 512, as to clerks of district courts in parish of Orleans and notary public; 529, as to oaths under Acts 216 and

State vs. Dreifus.

217, C. Pr, before any clerk of court; 2576, as to foremen of grand juries; 2579, as to Secretary of State; 2561, as to Auditor; Acts of 1877, No. 7, as to notaries public; 3543, as to sheriff.

The minute clerk of Section B, of the Criminal District Court of the parish of Orleans, is a constitutional officer. Const. of 1879, Act 138.

He has not been invested by either the Constitution, or any statute, with authority to administer an oath.

The opinion of the Court was delivered by

WATKINS, J.   The accused prosecutes this appeal from a conviction of *subornation of perjury,* and a sentence to six years' imprisonment in the State penitentiary.

For a reversal of the judgment and discharge from the sentence, he relies upon several bills of exception, a motion for a new trial, and a motion in arrest of judgment.

In this court his counsel assign as error in the record and proceedings, that there is manifest error in that it appears from the record "that the perjury, for the subornation of which the defendant was indicted, was perjury alleged to have been committed by one, Susan McMahon, on the trial of the case of the State vs. Thos. J. Ford, et als., in Section B of the Criminal District Court for the parish of Orleans, after she had been sworn as a witness by Richard D. Scriven, minute clerk of Section B of the Criminal District Court for the parish of Orleans.

"This defendant maintains that said Richard D. Scriven, minute clerk aforesaid, had no authority whatever to administer the oath as a witness to the said Susan McMahon on said trial."

The foregoing is the substantial repetition of the averments made in the motion in arrest of judgment.

The indictment sets out with precision that the perjury, for the subornation of which the accused is prosecuted, was perjury committed by Susan McMahon on the trial of the case of the State vs. Ford et als., in Section B of the Criminal District Court for the parish of Orleans, and that "the said oath having been administered to the said Susan McMahon by Richard D. Scriven, minute clerk of the said court, etc."

As this objection to the indictment involves its validity and that of all subsequent proceedings, we will dispose of it first.

I.

The oath lawfully taken is an essential to the indictment and consequent conviction for perjury; and every person who is guilty of subornation of perjury by procuring another person to commit the

crime of perjury, as aforesaid, shall be punished in the same manner as for the crime of perjury.   Whar. Crim. Law, sec. 2176.

The statute under which the defendant is prosecuted declares that "whoever shall wilfully commit perjury or shall, by any means, procure any person to commit wilful and corrupt perjury on his oath or affirmation in any suit, controversy, matter or cause *depending in any of the courts* of this State, or in any deposition or affidavit taken or made *pursuant to its laws*, upon conviction, etc."  R. S. sec. 857.

Upon the face of the statute, there are two general classes or kinds of oaths, within its contemplation, on either of which perjury may be committed.   One of them is an oath taken "in any suit, controversy, matter or cause depending *in any of the courts* of this State ; " and the other is an oath made or taken "in any deposition or affidavit  *   *  pursuant to the *laws of the State*."

If in either case the oath taken is false, wilful and corrupt, the crime of perjury is committed.

One of these has been denominated a *judicial* and the other a *non-judicial* oath.

In the ninth edition of Dr. Wharton's work on criminal law, this distinction is made.   He says :   "It is essential to constitute the offense that, if the oath be non-judicial, it be taken before the proper officer ; or, if it be judicial, before the court having jurisdiction of the proceedings.

"If, in case of a non-judicial oath, it appears to have been taken before a person who had no legal authority to administer it ; or, in case of a judicial oath, before a court which had no jurisdiction of the cause, the defendant must be acquitted.

*        *        *        *        *        *        *        *        *        *

"Being sworn by a clerk in the presence of the court, is being sworn by the court."   2 Whar. Crim. Law, sec. 1257.

Again :   "When the court has jurisdiction of the subject-matter of enquiry, it is not necessary that proceedings should be strictly regular. But if for want of some essential condition, no jurisdiction attached, perjury cannot be maintained."   Ibid, secs. 1258, 1262.

There is a precise and clear distinction made between a judicial and a non-judicial oath.

Perjury charged to have been committed on a *non-judicial* oath cannot be maintained if the person who had administered it had *no lawful authority ;* but perjury alleged to have been committed on a *judicial* oath can be maintained unless the *court was without jurisdiction of the cause.*

" No *de facto* title by the officer administering the oath will sustain an indictment for perjury.   But perjury may be assigned on an oath erroneously taken while the proceedings in which it was taken remain unreversed.

"And an oath administered by an officer (though incompetent) in presence of the court is regarded as administered by the court."   Ibid secs. 1263, 1313.

Again:  "At common law the name and office of the person or court administering the oath must be given, and a variance in this respect is fatal.

"It is, however, enough to allege swearing before a court, and proof of swearing before an officer of court, in presence of court, will sustain an allegation of swearing before, or by the court."   Ib., sec. 1287.

" But, as a general rule, the principle of the statute (23 Geo. C. 11), has been accepted among us as virtually a part of the common law, though it must appear from the indictment that the officer administering the oath was of a *class* authorized by law *to act* in such capacity.

" Beyond this, specification need not be pushed."   Ibid, sec. 1288.

Again:  " It is not necessary for the prosecution to prove the appointment of the officer who administered the oath, if a *prima facie* case of authority is made out, and (if the court will not judicially notice it), that the person lawfully exercising the duties of that office had authority to administer an oath in such a case.   And the officer may be called to prove that he was *acting* as such.

. \*        \*        \*        \*        \*        \*        \*        \*        \*        \*

"Swearing before a clerk in open court is equivalent to swearing before the court. Ib. sec. 1315.  \*  \*  \*  \*  Proof that an individual has *acted notoriously* as a public officer is *prima facie* evidence of his official character, etc."

In the sixth edition of Bishop's Criminal Law a similar precept is given.

" An oath administered by a clerk is, ordinarily, the same as administered by the judge; subject, perhaps, to statutory modifications in some localities."   2 Bishop Crim. Law, sec. 1020.

But the learned counsel for the defendant insist, in argument, that Bishop and Wharton are not common law authors, and attract our attention to the provisions of the act of May 4th, 1805, which is to the effect that " all crimes, offenses and misdemeanors  \*  \*  shall be taken, intended and construed according to the common law of England."

"Russell on claims" is a valuable treatise, of which Sir William Russell, once Chief Justice of Bengal, was the author and compiler, and which was subsequently revised by Charles Greaves, an English barrister. It is received authority in the courts of this country.

That learned judge says : "It is sufficient to support the averment that the party administering the oath had competent authority for the purpose by showing, in the first instance, that he *acted* as a person having such authority.

"Thus, upon an indictment for perjury before a surrogate in the ecclesiastical court, it was ruled, that the fact of the person who administered the oath having *acted* as surrogate, was sufficient *prima facie* evidence of his having been duly appointed, and *having authority to administer an oath.*

"And Lord Ellenborough, C. J., said: 'I think the fact of Dr. Parsons having *acted* as surrogate is sufficient *prima facie* evidence that he was duly appointed, and had *competent authority to administer oaths.*" 2 Russell on Crimes, p. 659.

This may be, perhaps, a new question in our jurisprudence, but all the text writers appear to be in perfect agreement on the principles herein announced.

On their authority we conclude that the following propositions are established, viz :

1st. That there is an essential difference between a judicial and a non-judicial oath ; and that a judicial oath is one taken before an officer in open court ; and a non-judicial oath is one taken before an officer *ex parte,* or out of court.

2d. That in case perjury is assigned as having been committed on a judicial oath it is sufficient that the person *acting* is one of a *class* of officers having *prima facie* authority, and does administer the oath with due formality and solemnity, in the presence of the court—it having jurisdiction of the cause.

3d. In case the perjury is assigned on a non-judicial oath, it is insufficient to maintain a conviction, if the person administering the oath was *not legally authorized to administer that particular oath.*

4th. Being sworn by a clerk, in the presence of the court, is being sworn by the court ; and, an oath administered by an officer, though incompetent, in presence of the court, is regarded as administered by the court.

Richard D. Scriven was minute clerk of section B of the Criminal Court. He acted as clerk when he administered the oath as a witness to Susan McMahon,

State vs. Dreifus.

She was sworn as a witness on behalf of defendants, during the progress of the trial of the State vs. Ford and others, a prosecution at that time depending in said Criminal District Court, and which court had jurisdiction thereof.

We regard the minute clerk as a constitutional officer, possessing such powers as are delegated to him by law.

Article 138 of the Constitution of 1879 provides that his " duties shall be regulated by law."

Act 30 of 1880 declares that " they shall, under the supervision of the judge" perform certain duties which are enumerated, " and such other duties as said judge may direct."

Defendant's counsel argue that the power to administer an oath is not a ministerial, but a judicial one, and cannot be delegated ; or, in other words, the constitution authorized the Legislature to regulate the duties of the minute clerk, and could not empower a judge to authorize this officer to discharge duties not enumerated in the legislative mandate.

But we are not ready to concede the power to administer an oath to be a judicial one.

Art. 133 of the Constitution of 1868 declares that " *no judicial power* shall be exercised by clerks of courts.

Under that constitutional inhibition the Legislature could not confer upon clerks of court any judicial power ; yet they were certainly authorized to administer oaths.

Art. 122 of the Constitution of 1879 conferred upon the Legislature power " to vest in clerks of court authority to grant such orders, and do such acts as may deemed necessary for the furtherance of the administration of justice," etc. ; but in the act of the Legislature conferring on clerks certain judicial powers, the power to administer oaths is not enumerated. Act 106 of 1880.

As the clerk had, and exercised the power of administering oaths under the constitution of 1868, it was clearly a non-judicial one, and *ex necessaria causa* " those powers and duties" that were conferred upon clerks embraced the power to administer oaths, and it was a purely ministerial one.

Whether the presiding judge of Section B of the Criminal District Court had ample authority, under the act of the Legislature quoted, to confer upon the minute clerk thereof the power to administer oaths or not—and we need not decide that question ; an oath was administered by the minute clerk to the witness, Susan McMahon, in open

court, in the presence of said judge, and in the apparent exercise of a rightful and legal authority.

The assignment of perjury on that oath, in a cause depending before that court, and which was in due progress of trial therein, and of which cause said court had competent jurisdiction, is maintainable under the indictment; and the defendant's motion in arrest of judgment was correctly refused.

## II.

Our attention is called to the fourth and fifth grounds in defendant's application for a new trial:

The fourth is predicated upon the theory that no evidence was spoken or read to the jury in the case, verifying the statement in the indictment that Susan McMahon was sworn as a witness on the trial mentioned, by Richard D. Scriven, minute clerk.

In support of this motion the affidavits of two persons are annexed to it, and they state, substantially, that no such evidence was introduced.

But the trial judge, in his assignment of reasons, appended to defendant's bill of exceptions, makes a clear and succinct statement to the contrary. He sets out a detailed statement of the evidence, and enumerates the witnesses who gave the evidence, and concludes by saying: "To my mind the evidence on this branch of the case was clear and positive."

We feel constrained to accept this statement of the trial judge rather than the merely negative declarations of two disinterested by-standers.

But it is further argued that "the extract from the minutes of court" of the Ford case "show that Susan McMahon" was sworn *"by the clerk,"* and there is therein no mention made of Richard D. Scriven, minute clerk, etc., and that this record evidence discloses a *fatal variance* between the indictment and the proof received under it.

To pass upon this question would necessarily involve an examination of evidence which went to the jury, and upon which we had no power to decide.

Defendant's counsel should have requested the trial judge to charge the jury that the proof as to the person who administered the oath to Susan McMahon, must correspond with the averments in the indictment, else the variance would be fatal, and they must acquit the prisoner; and if the judge had declined to give such a charge, he should have reserved a bill of exceptions to his ruling. 33 Ann. 1016, State vs. Hipolite Polite; 37 Ann. 41, State vs. Tony Taylor.

In Wharton's Crim. Pl. and Pr., sec. 760, it is said: "That when an

averment which is necessary to support a particular part of the pleading, has been imperfectly stated and a verdict on an issue involving that averment is found, and it appears to the court, after verdict, that unless this averment were true, the verdict could not be sustained—in such case the verdict cures the defective averment, which might have been had on demurrer." 1 Bishop Crim. Pro., sec. 707 a.

### III.

The fifth ground for a new trial assigned is to the effect that each and all the witnesses who testified and jurors who sat upon the case, were sworn by Richard D. Scriven, minute clerk, a person not authorized to administer oaths, and he has thereupon been tried "without due process of law."

Such objections should have been made at the time the jurors or witnesses were sworn, to have been of avail to the accused. This competency cannot be raised for the *first* time upon an application for a new trial. 36 Ann. 864, State vs. Frank Wilson; 36 Ann. 206, State vs. Jos. McGee; 37 Ann. 216; State vs. Victor Pierce.

### IV.

We have attentively and carefully examined the various grounds of the defendant's motions for new trial and arrest of judgment, as well as the authorities cited in their support, and have reached the conclusion that said motions were not well taken and same were correctly overruled.

Judgment affirmed.