Reese, J.
delivered the opinion of the court.
So far as the administrator of Hopkins is concerned, this is a bill for the specific performance of a contract to convey lands, made by Hopkins in his lifetime with the complainant, and evidenced by a title bond. The heirs of Hopkins are not made parties to the suit, and the main question is, whether a suit in Chancery for the conveyance of real estate, which has descended to the heirs by the death of the ancestor, can be maintained against the personal representative alone, without joining the heirs. Upon general principles it is most obvious that it cannot be maintained. The general rule as to parties, says Lord Redesdale in his Treatise on Chancery Pleadings, p. 145, is, “That however numerous the persons may be, who are interested in the subject of a suit, they must nevertheless be all made parties plaintiffs or defendants so that a complete decree may be made between those parties;” it being the constant aim of the Court of Equity todo complete justice, by embracing the whole subject, deciding upon and settling the rights of all persons interested in the subject of the suit, to make the order of the court perfectly safe to those who are compelled to obey it, and to prevent future litigation. And Mr. Cooper in his Treatise on the same branch of learning, says: “the first general rule to be observed upon this subject is, to make all persons parties who are either legally or beneficially interested in the subject matter or result of the suit. The heirs, in such a case as the present, are the legal owners of the very estate *81 sought to be conveyed. It does not belong to the personal representative either legally or beneficially, in trust or otherwise. He has nothing to do with the real estate. But as at law the personal representative is liable to be sued for the recovery of damages for his intestate’s breach of a covenant to convey land, a statutory provision was made in 1794, ch. 5, sec. 1, by which it is declared to be lawful for the personal representative to make title when the testator or intestate was bound by his obligation to do so; but that he shall not be bound to make such title before the obligation has been recorded; and the statute adds, that the holders of obligations shall not charge the personal estate before the producing the obligation duly authenticated and demanding a title, and which demand shall have been refused. But this statutory provision it seems to us has no tendency to sustain a suit brought in Chancery, not to obtain a decree against the personal representative, to be paid out of the personal estate, but a decree for the conveyance of the land, the property of the heirs, in a case where they have not been made parties. He may protect the personal estate which he represents, by making a conveyance if properly demanded. If he does not do so in a proper case, he is liable by the provisions of the dommon law, as the statute takes for granted, to be sued at common law for damages. The statute gives no action against him; it existed before; it provides no remedy in Chancery; that matter stands as before. But it is said it creates a duty and confers a power, and that a court of Chancery may enforce the performance of that duty, by directing the execution of the legal power to convey. But as we have already said, this power is uncoupled with any interest or title. The personal representative is the mere statutory agent or conduit through whom the title of the heirs may pass; but if a suit is brought in Chancery to divest the title of the heirs, by directing a conveyance by the personal representative, it would seem by the operation of first principles, that such heirs shall be present in court as parties to be heard. An attorney in fact has sometimes power to convey land, and may have made the contract of sale, and signed the obligation to convey, yet who, for that reason, would make him the sole party, omit *82 ting his principal, in a bill filed for the specific performance of a contract for the sale and conveyance of land? The title not being in the personal representative or attorney in fact, could not be divested by decree, but only by process of contempt; yet, ever since the act of 1801, ch. 6, sec. 48, the course of a Court of Chancery has in general been, not to order a conveyance, but to divest the title by the decree itself; for to that complexion and result things must come at last, if the proceedings in contempt should fail to be effective. But the question seems to me to be too free from doubt or difficulty, to merit earnest discussion. The bill, therefore, in this case, as to the personal representative of Thomas Hopkins, was properly dismissed, upon the ground above stated; and this being done, there is no relief which a Court of Chancery can give, or ought to give, to the complainant as against Darter, which cannot be as readily investigated, and as beneficially applied in the suit depending between them in the court at law, as in this court. And without going into detail, which in this case would be difficult, and scarcely useful or proper, we may say, that the allegations of the bill, the statements of the answer, and the proofs on both sides do not make a case proper for the active interference of a Court of Chancery.
The decree of the Chancellor is, therefore, affirmed as to both defendants, and the bill dismissed without prejudice.