The State v. Williams.

---

THE STATE OF KANSAS v. JOHN C. WILLIAMS.

No. 11,417.*  (60 Pac. 1050.)

1. PERJURY—*De Facto Judge.* A witness who swears falsely about a relevant matter before a *de facto* judge, whose judgment is binding upon the parties to the proceeding, is guilty of perjury, and liable to the same punishment as though the oath had been administered by a *de jure* judge.

2. ——— *De Facto Police Judge—Collateral Attack.* It being shown that the police judge who administered the oath upon which perjury was predicated was appointed by officers having authority to appoint, and that he had qualified and entered upon the discharge of his duties, testimony that he had changed his residence to a place outside of the city was properly excluded. His title or right to the office was not subject to collateral attack.

Appeal from Saline district court; R. F. THOMPSON, judge. Opinion filed May 5, 1900. ·Rehearing. Affirmed.

*For the opinion on the first hearing, see 60 Kan. 837, 58 Pac. 476.—REP.

*A. A. Godard*, attorney-general, and *Charles W. Burch*, county attorney, for The State.

*Mohler & Hiller*, *Bond & Osborn*, and *David Ritchie*, for appellant.

The opinion of the court was delivered by

JOHNSTON, J.: Our attention is called to a point that was not given sufficient consideration at the first hearing (60 Kan. 837, 58 Pac. 476), namely, whether perjury may be predicated upon an oath taken before a mere *de facto* officer.. After the record of appointment of T. B. Chapman as police judge had been produced, as well as proof of qualification and possession of the office by him, the defense offered testimony tending to show a change of residence by him, and that he was therefore incapable of holding the office and not a *de jure* police judge, but the court sustained an objection to the offer and excluded the testimony. In charging the jury, the court ruled that the record proof of the appointment, qualification and possession of the office by Chapman authorized him to administer the oath to the defendant, and a request for an instruction to the effect that there could be no conviction, unless the police judge was a *de jure* officer, was refused. The record therefore fairly raised the question whether perjury can be assigned upon an oath administered by a *de facto* court or officer.

It is a general rule of universal application that a person who receives an appointment to an existing office from those having authority to appoint, and qualifies and enters upon the discharge of the duties of the office, is a *de facto* officer, although he may be ineligible by reason of being a non-resident, a minor, or an alien. The acts of an officer who comes into

possession of an office under the forms of law, and who assumes to act under such an appointment as Chapman had, are deemed to be legal and binding as to the public and all persons who have any interest in the things done by him.   The acts of a *de facto* judge cannot be collaterally attacked, and his right to the office is not open to question except in a direct proceeding brought by the state ; and this is true in a case where the officer is incapable of holding the office. (*Hunter's Adm'r v. Ferguson's Adm'r*, 13 Kan. 462 ; *Hale v. Bischoff*, 53 id. 301, 36 Pac. 752.)  Here there were a *de jure* office, a regular appointment and qualification, possession of the office by the appointee by virtue of the appointment, an exercise of the functions of the office with the acquiescence of the public, and, for that matter, of the defendant himself, by appealing from the decision of the court to the district court. If it is true, as claimed, that he had removed his residence outside the limits of the city, it affords the defendant no ground for challenging the title to his office.   That can only be done in a direct proceeding by the state ; and, as to third parties, his judgment had the same force as one rendered by a *de jure* judge.

It is claimed that an exception is made in cases of perjury, and some English courts apparently support the view that perjury cannot be assigned on an oath administered by an officer *de facto*.  (*Rex v. Verelst*, 3 Camp. 432.)   Some of the courts of this country have followed the doctrine of the English cases, examples of which are *Biggerstaff v. Commonwealth*, 11 Bush ( Ky.) 169 ; *Muir v. State*, 8 Blackf. ( Ind.) 154 ; *Staight v. The State*, 39 Ohio St. 496.   The case last cited was again considered by the supreme court of Ohio in *State v. Gardner*, 54 Ohio St. 24, 42 N. E. 999, 31 L. R. A. 660, Spear, J., remarking that the person who adminis-

tered the oath in that case "had received no appointment under the judge's second term, and had taken no oath. Even had there been an office to fill, he lacked color of office, and in no respect could be regarded an officer *de facto*." As the officer who administered the oath did not have color of title to the office claimed, and was not an officer *de facto*, the Ohio case cannot be regarded as an authority for the English view. In Bishop's New Criminal Law, section 464, it is said:

"If the judge or any inferior officer of his court is such *de facto* and not *de jure*, litigants are bound by its doings to precisely the same extent as though the official qualifications were without defect. Therefore, in reason, both they and the public justice are entitled to the same protection from false swearing by witnesses as though the officers were such *de jure*. . . . The author submits that the English doctrine dates from a period long since the revolution; that the judges propounding it did not think of the true reasoning applicable to the question; that so did not such American judges as have followed it; and that the accurately considered law of perjury, while it requires a jurisdiction in the tribunal, and the like, punishes false swearing to a relevant matter before it, whenever it holds the parties bound by its judgment." (*Howard v. Sexton*, 1 Denio [N.Y.] 440; *The People v. Hopson*, id. 574; *The People against Cook*, 8 N. Y. 67.)

In *Lambert v. The People*, 76 N. Y. 220, this question was considered, and while there was a division of opinion on some phases of it, the court held that a *de facto* title is sufficient to authorize the lawful administration of an oath, and that a commission regular on its face is unimpeachable. Some members of the court appear to have followed the doctrine of *Rex v. Verelst*, supra, holding that an oath administered by a person who never had any power to act, and where

there was an entire want of authority from the be-
ginning, a mere intruder in fact, could not be made
the basis of a prosecution for perjury.   In such case
something more must be shown than that a party has
merely acted as an officer, but it is held that where
an appointment has been made by the appointing au-
thority, and the officer has the color of office and a
semblance of competent authority, he is to be re-
garded as an officer *de facto*, and the matter of sub-
sequent disability, non-residence, or the like, cannot
be made the subject of inquiry in a perjury case.

We are inclined to follow the rule as stated by
Bishop, that when a court has the jurisdiction and
authority to render a judgment binding upon the
parties to the action, false swearing in a relevant
matter before it is punishable as perjury.   Our stat-
ute defining perjury requires that the oath must be
legally administered.   This means no more than that
it shall be in a manner cognizable in the courts and
sufficient to be recognized by law.   Since a *de facto*
court may sit in the trial of cases, compel the attend-
ance of witnesses, punish them for contempt if they
refuse to answer, and render a judgment based upon
the testimony produced before it binding upon the
parties, it would seem that it was authorized to ad-
minister oaths, and that false swearing in such a
court amounted to punishable perjury.   A *de facto*
grand jury may present a legal indictment for per-
jury (*The State v. Marsh*, 13 Kan. 596), and certainly
the authority of a grand jury in such a case is of no
less consequence than the authority of the court ad-
ministering the oath upon which perjury is assigned.
In the case last cited Justice Brewer remarked : "A
*de facto* prosecuting attorney legally prosecutes ; a *de
facto* judge legally tries and sentences ; and a *de facto*
grand jury may with equal propriety legally indict."

In this country the *de facto* doctrine applies to the fullest extent, and we can think of no good reason why an exception should be made for the protection of those guilty of swearing falsely when their testimony may be made the basis of a conclusive judgment in either civil or criminal proceedings. As counsel for the state in their argument say, "it might occur that an innocent man should be convicted and executed for a capital crime on perjured testimony in a *de facto* state ( *Texas v. White*, 7 Wall. 700, 19 L. Ed. 227), under a law approved by a *de facto* governor ( *The State of Wisconsin, ex rel., v. Williams*, 5 Wis. 308), before a jury drawn by a *de facto* jury commissioner (*State v. Lee*, 35 S. C. 192, 14 S. E. 395), in a court sitting in a *de facto* municipality ( *Steelman v. Vickers*, 51 N. J. L. 180, 17 Atl. 153 ), and presided over by a *de facto* judge (*State v. Carroll*, 38 Conn. 449), upon an information filed by a *de facto* county attorney (*In re Gilson, Petitioner*, 34 Kan. 641, 9 Pac. 763), or an indictment presented by a *de facto* grand jury (*The State v. Marsh*, 13 id. 596)."

Our conclusion is that the record evidence of the appointment and qualification of Chapman, as well as that he was acting as police judge, showed beyond dispute that he was a *de facto* judge, and that proof of a change of residence was properly excluded. It follows, too, from what has been said, that no error was committed in charging the jury.

The order for affirmance heretofore given must stand.