Markey v. State.—Syllabus.

---

GEORGE L. MARKEY, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

1. Where a document is offered in its entirety and is admitted in evidence, without objection, a motion to strike out said document as an entirety upon the ground that a portion thereof is incompetent and inadmissible upon certain specified grounds, should be overruled, when any part of said document is admissible as against the specific grounds urged.

2. Where a record was offered in evidence by the State and at the time of said offer it was stated that certain portions of said record were not included therein and were not offered, and the defendant, being thus put upon notice as to the excluded parts, consented to the introduction of said record, no error was committed by the trial court in denying a motion of the defendant to strike out said record on the ground that the whole record was not filed in evidence, especially where it is not made to appear that the defendant was in any manner harmed by the omission of the excluded parts.

3. Where upon motion of the complainant's solicitors in a divorce suit the court orders and appoints a certain designated person to take the testimony of the complainant and other witnesses in said divorce suit but fails to designate said person as an examiner, master in chancery or by any official title, the order is sufficient to confer full authority upon the designated person to take said testimony and such authority carries with it the power and authority as well as the duty to administer oaths to the complainant and other witnesses.   (Hocker, J., dissenting.)

4. Where the complainant in a divorce suit procures an order from the court appointing a certain designated person to take the testimony of himself and other witnesses in said suit, but said order fails to designate said person an examiner or master in chancery or to give to him any official title, and the complainant proceeds to have his testimony taken in said divorce suit by the person so appointed by the court, at complainant's request, and uses said testimony so taken as a basis for the relief sought in his bill, and obtains a final decree thereon, the irregularity or defect, if any such existed in the appointment, was waived by said complainant.   (Hocker, J., dissenting to the extent that the doctrine of this headnote can apply to a prosecution for perjury.)

5. Mere irregularities in the appointment of a master in chancery, an examiner or other person appointed by the court to take testimony, whether such person be designated in said order by any official title or not, can not be questioned on the trial for perjury of one who, it is alleged, testified falsely before him. (Hocker, J., dissenting on the ground that the record does not show a mere irregularity in the appointment of an examiner, but does show that no person was appointed examiner or master.)

6. The identification and production of the testimony of the defendant, who was complainant in a divorce suit, with proof of the signature of the defendant, as well as of the officer taking said testimony thereto, are at least *prima facie* sufficient in a prosecution for perjury, to establish that defendant was actually sworn, and, unless this presumption be rebutted or overcome by other evidence, it would seem that such evidence would become conclusive as to such swearing.

7. The change of the letter v in the word "live" to f, so as to make the sentence read "I am a resident citizen of the State of Florida and have been all my life," though made by the examiner after the testimony of the defendant so taken by

Markey v. State.—Syllabus.

him had been filed in the clerk's office, while an irregularity, was not a material change and no harm could have resulted to the defendant therefrom, especially as the examiner had testified that said defendant had actually used the word "life" in so testifying before him and that the change was made by him in order to make sense out of said sentence, and that it might speak the truth.

8. Although a tribunal must have jurisdiction of the cause or proceeding before perjury can be committed therein, yet when there is a defect which renders the proceeding voidable only, and such proceeding is amendable, or when the defects are waived by the parties and the cause is heard on the merits, then perjury may be committed. (HOCKER, J., dissenting.)

9. Where a bill for divorce contained sufficient allegations to give the court jurisdiction and to warrant the relief sought, if true, the fact that, upon trial of the complainant for perjury in tesifying falsely as to material facts alleged in said bill, it appeared that neither party had resided in this State for the statutory period of two years will not bar a conviction.

10. This court can not consider any grounds of objections to the admissibility of evidence, except such as were made in the court below; the plaintiff in error being confined to the specific grounds of objection made by him in the trial court.

11. To make a valid oath for the falsity of which perjury will lie, there must be in some form, in the presence of a person authorized to administer it, an unequivocal and present act, by which affiant consciously takes upon himself the obligation of an oath. It is absolutely essential to the offense that the testimony or statement relied on as constituting perjury was under an oath actually administered. Without this there can be no conviction for the offense. If the false oath charged is a written statement sworn to by defendant, it is immaterial whether the oath was administered before or after the statement was reduced to writing and signed, the material point being that the defendant was sworn.

12. If the affidavit or testimony of a defendant were actually used by him in the cause in which it was taken, proof of this fact will supersede the necessity of proving his handwriting, upon his trial for perjury, but this proof will not dispense with the requirement as to proof that the defendant was sworn.

13. While the oath must be administered, and by a person duly authorized thereto, it is immaterial in what form it is given, if the one testifying at the time professes such form to be

binding on his conscience. The fact that a person takes an oath in any particular form is a binding admission that he regards it as binding on his conscience. The underlying principle is that whenever the attention of the person who comes up to swear is called to the fact that the statement is not a mere asseveration, but must be sworn to, and, in recognition of this, he is asked to do some corporal act, and does it, this is a statement under oath. And this without kissing any book, or raising his hand, or doing any religious act.

14. Generally speaking, conclusive presumptions and estoppels have no place in criminal law, for the purpose of establishing the body of the crime charged. The defendant may prove the actual fact in dispute, notwithstanding any admission or confession he may have made to the contrary, and especially is this true in a prosecution for perjury.

15. In a prosecution for perjury the person alleged to have administered the oath, the defendant himself, or any witness present at said alleged swearing may be interrogated fully as to all the facts and circumstances connected with the alleged swearing of the defendant, in order that it may be determined whether or not the defendant was sworn.

16. There is a broad distinction between motions for a new trial and motions in arrest of judgment and neither motion can be made to perform the functions of the other. In considering the denial of a motion for a new trial grounds thereof which are proper only in a ·motion in arrest of judgment will not be considered in an appellate court.

17. In an indictment for perjury based upon alleged false swearing by the defendant as a witness in his own behalf in a divorce suit wherein he was complainant, where the relief sought was not on the ground of adultery, it is not necessary to allege therein that the divorce was not sought on the ground of adultery.

18. The allegation in an indictment for perjury that it became and was a material matter respecting which the oath was taken whether or not the defendant on July 15, 1901, had resided in Florida for two years prior thereto, was sufficient to show the materiality of the alleged false testimony, without alleging the facts showing its materiality.

This case was decided by the court *En Banc.*

Writ of error to the Circuit Court for Hamilton county.

The facts in the case are stated in the opinion of the court.

*J. M. Rivers, D. B. Johnson* and *J. R. Walker* for plaintiff in error.

*W. H. Ellis,* Attorney-General, and *M. F. Horne* for the State.

SHACKLEFORD, J.—At the fall term, 1902, of the Circuit Court for Hamilton county the plaintiff in error, George L. Markey (hereinafter referred to as the defendant), was indicted for perjury. Omitting the formal parts, said indictment was as follows: "In the name of the State of Florida: The grand jurors of the State of Florida, duly chosen, empanelled and sworn diligently to inquire and true presentment make in and for the body of the county of Hamilton, upon their oath present that on the 28th day of September, A. D. 1901, in the county and State aforesaid, a certain cause was then and there pending in the Circuit Court in and for Hamilton county, State of Florida, in which one George L. Markey was complainant, and Mrs. Lou T. Markey, wife of the said George L. Markey, was defendant; that said cause was a bill for divorce; that said cause came on to be heard and was heard on said day before the Hon. E. P. Smith, examiner, duly appointed by the judge of said court to take the testimony in said cause, and thereupon the said George L. Markey then and there became and was a witness in his own behalf in said cause, and was then and there duly sworn according to law, by and before the Hon. E. P. Smith, examiner, as aforesaid to depose and speak the truth in said cause, the said examiner having then and there lawful and competent authority to administer such oath; that upon the hearing aforesaid, before the examiner aforesaid of said cause, it then and there became and was a material matter respecting which said oath was taken whether the

said George L. Markey on the 15th day of July, A. D. 1901, had two years resided in the State of Florida, and thereupon the said George L. Markey being so sworn as aforesaid to speak the truth as aforesaid, and wickedly contriving and intending to cause and procure a decree granting him a divorce from his said wife, to be made by the judge of said court, he, the said George L. Markey, did then and there wilfully, falsely, wickedly, knowingly, maliciously and corruptly and by his own consent upon his oath aforesaid in the county and State aforesaid, and on the day aforesaid depose, swear and give evidence before the Hon. E. P. Smith, examiner, as aforesaid, among other things, the following, to-wit: 'I am a resident citizen of the State of Florida and have been all my life.' Whereas in truth and in fact the said George L. Markey had not been residing in the State of Florida two years on the said 15th day of July, A. D. 1901, and in truth and in fact the said George L. Markey had for two years next preceding the said 15th day of July, 1901, resided in the State of Georgia, and thereupon the said statement of the said George L. Markey, that he, the said George L. Markey, had for two years prior to the 15th day of July, 1901, resided in the State of Florida was false, and the said George L. Markey well knew it was false. So the jurors aforesaid upon their oath aforesaid, do say that the said George L. Markey at the time and in the county and State aforesaid, did commit the crime of perjury against the peace and dignity of the State of Florida, and contrary to the statute in such cases made and provided.

L. E. ROBERSON,<br>
State Attorney for the Third<br>
Judicial Circuit of Florida."

The defendant was arraigned and interposed a plea of not guilty but said case was continued, at the request of the defendant, and a trial thereof was not had until the fall term, 1903, of said court, which trial resulted in a verdict of guilty, and the defendant was sentenced to con-

finement in the State prison at hard labor for a term of five years.    From this judgment and sentence the defendant seeks relief here by writ of error.    Eleven errors are assigned, the first of which is as follows:   "That the court erred in denying and overruling defendant's motions to strike from the evidence the parts of the record in the case of *George L. Markey v. Lou T. Markey*, Bill for Divorce, which had been offered and admitted in evidence."

Turning to the bill of exceptions, we find that the State offered in evidence the entire files in said divorce case, after the same had been first identified by the clerk of the Circuit Court, exclusive of the evidence given before the examiner by W. L. Ellis and Mrs. N. N. Hull.    At the time of the offer of said evidence, counsel for defendant enquired for what purpose the same was offered, to which the State Attorney replied as follows:    "It is offered for the purpose, 1st, of proving that there was such a case pending as that alleged in the indictment,   2nd, for the purpose of showing that E. P. Smith was appointed examiner to take the testimony as alleged in the indictment, and for the further purpose of showing that George L. Markey testified as a witness in his own behalf."    Upon this statement being made by the State Attorney, counsel for defendant stated that "We admit the evidence, with the right to move to strike at any time hereafter."

After said record had been so admitted in evidence, counsel for defendant stated that they objected to and moved to strike same, upon various grounds set forth in the bill of exceptions.    Thereupon, the court made the following ruling:   "The objection that the introduction of the original record is not evidence and that certified copies should be introduced is sustained; but they admitted under the obligation of the State's Attorney, which he now makes, to file certified copies in lieu of the originals, which are to remain in the custody of the clerk.    The motion as to the other grounds is overruled, to which ruling the defendant then and there duly excepted."

Later·on we find that counsel for defendant "excepted to the admissibility of the record heretofore introduced," which "exception" was overruled and exception noted by the court.

At the close of all the evidence in chief for the State, the defendant moved to strike the entire record upon various grounds. This motion was overruled by the court, and an exception duly noted thereto.

All of these rulings form the basis of the first assignment. The order of the court appointing E. P. Smith to take the testimony in said divorce suit is as follows:

"George L. Markey, *Complainant,*

  v.                                              } Bill for Divorce.

Lou T. Markey, *Defendant.*

Upon motion of D. B. Johnson and B. B. Johnson, complainant's solicitors of record herein, it is ordered and adjudged and decreed by the court that E. P. Smith be and he is hereby appointed to take the testimony of the complainant and J. W. Knowles of Hamilon county, Florida, and such other witnesses as complainant may produce before him, and that he report the same to this court with all convenient dispatch. Done and decreed at chambers at Lake City, Florida, this the 12th day of September, A. D. 1903.

B. H. PALMER, Judge."

The testimony of George L. Markey, as reported by said examiner, is as follows: "This cause coming on to be heard before the examiner hereinbefore appointed to take the testimony herein, the following named witnesses were produced who testified in the following order, to-wit: George L. Markey being duly sworn says: 'I am the complainant in the above cause. I am acquainted with the defendant. She is my wife. We were married on the 25th day of December, A. D. 1889. We lived together as man and wife until May 19th, 1901; we were living at High Springs, Florida, at the time of our separation; during the

last three or four years that the defendant and myself lived together the defendant became unaffectionate·towards me, and would get mad with me without any cause whatever on my part. She grew worse up to our separation; she was a woman of high and ungovernable temper; when she would get mad with me she would abuse me and call me all kinds of bad names. I tried to persuade her to behave herself and let us live together peaceable as we should; during the last few years that we lived together I was a traveling salesman for a Western wholesale shoe house, and when I would start on my trips she would tell me that she wished that the train would be wrecked and that I would be killed. A day or two before our separation she told me that she intended killing me; that she did not love me, and intended to make home a hell for me, as I lived with her. Sometime before we separated she threw a carving knife at me, cutting my hand, and when she was mad would call me old dog, old devil and such other names. I did all I could to live with the defendant, but I could not do so in peace and safety. I always treated the defendant as kind as I could; I supported her to the best of my ability, and she never wanted for any of the necessaries of life that I was able to furnish. I had reasons to fear that she would take my life or do me some great bodily harm if I continued to live with her. The defendant lives in Alachua county, Florida. I am a resident citizen of the State of Florida, and have been all my life. I have not lived with the defendant since the date of our separation, and there is no cohesion between myself and the defendant.

GEORGE L. MARKEY,

Sworn to and subscribed to before me this 28th day of September, 1901.

E. P. SMITH, Examiner."

It will be observed that, at the time the record in the divorce suit was offered in evidence by the State, in response to a question by counsel for defendant the State Attorney announced the purposes for which said record was offered,

whereupon counsel for defendant said: "We admit the evidence, with the right to move to strike at any time hereafter." It will also be noticed that in the first motion to strike out said record from the evidence, if it can properly be called or considered as a motion, that objections were made to the entire record and it was sought to have it stricken out as an entirety, for certain specified objections thereto. Part of said evidence was clearly admissible as against the specific objections made, therefore, the motion to strike out said record as an entirety was properly overruled. *Richard v. State,* 42 Fla. 528, 29 South. Rep. 413; *Higginbotham v. State,* 42 Fla. 573, 29 South. Rep. 410; *Anthony v. State,* 44 Fla. 1, 32 South. Rep. 818; *Johns v. State* 46 Fla. 153, 35 South. Rep. 71; *Fields v. State,* 46 Fla. 84, 35 South. Rep. 185; *Hoodless v. Jernigan,* 46 Fla. 213, 35 South. Rep. 656; *Cook v. State,* 46 Fla. 20, 35 South. Rep. 665. We find that, in compliance with the order of the court, certified copies of the papers in the said record so introduced in evidence were substituted in lieu of said original papers. This disposes of the first motion to strike out said record and also of the "exception" later interposed to its admissibility.

We now come to the consideration of the motion made by defendant to strike out said evidence, at the close of the evidence in chief introduced by the State. The first ground of said motion is "because the whole record was not filed in evidence." This ground is disposed of by what has already been said. At the time said record was offered by the State it was stated that certain portions of said record which were specified, were not included therein and were not offered, and yet the defendant, being thus put on notice as to the excluded parts, consented to the introduction of said record. He can not be heard now to complain because of the omission of certain papers therefrom, especially as it has not been made to appear that he was in any manner harmed thereby. The second ground of said motion is as follows: "Because it appears upon the face of the said

record that the hearing at which the defendant is alleged to have testified falsely was had before an examiner, and the oath, if administered at all, was administered by such examiner, who is not authorized by the law in this State to administer an oath."

It is contended by the defendant that the order made by the court appointing E. P. Smith to take the testimony in said divorce case did not designate him as an examiner, or as any officer, and that, even if he had been designated therein as an "examiner," he would have had no authority to administer oaths. We are of the opinion that this ground is not tenable. In *Gerity v. Seeger & Guernsey Co.,* 163 N. Y. 119, the following order was made: "This cause having been reached in its regular order on the calendar, and on consent of both parties, it is ordered, that this case be referred to Roswell R. Moss, Esq., to hear, try and determine the same." It was held that this order was sufficient to constitute the person named therein a referee, though he was not so designated therein, and that a judgment rendered by said named person as referee was valid. Also see *Morris Canal and Banking Company v. State,* 14 N. J. L. 411, text 428; *Dean v. Emerson,* 102 Mass. 480; *Buchan v. Rintoul,* 70 N. Y. 1; *Roberts v. Johns,* 24 S. C. 580; *In Re Fifty-Four First Mortgage Bonds,* 15 S. C. 304; *Ex Parte Brown and wife,* 15 S. C. 518; *Tibbets v. Hapgood,* 34 N. H. 420; *Blain v. Patterson,* 48 N. H. 151. In *Mann v. Jennings,* 25 Fla. 730, 6 South. Rep. 771, the person appointed by the chancellor to execute the decree of foreclosure therein was styled a "commissioner," and appellant contended "that a commissioner is not a proper officer to make such sale under foreclosure of mortgage," and sought to have the ruling made by the court below denying the motion to set aside the sale reversed upon said ground. This court, in the opinion rendered therein, text 732, said: "We know of no such law which restricts a chancellor to any particular designation of official title for the person he appoints to execute a

decree of foreclosure. Such person is usually styled a master, but if, in the absence of any prescribed name, he be styled a commissioner, or any other appropriate name for the office, and is given the duty and powers usually conferred upon a master by the appointment, we are unable to see that his apointment is invalid because of the title, or that his acts, if in compliance with the directions given him, should not be confirmed."

Section 1428 of Rev. Stats. 1892, provides that testimony in chancery cases may be taken "before an examiner to be appointed by the court," and that "examiners when appointed may take the testimony upon written direct and cross-interrogatories, or orally, as the court may in its order direct, or as the rules of practice of the court may prescribe." Article 7 of chapter X, title III of Rev. Stats. 1892, provides for the appointment of masters in chancery, who are also authorized to take the testimony of witnesses. Equity Rule 69 provides for the taking of testimony by a commissioner or commissioners, and Equity Rule 74 provides for the appointment of a master *pro hac vice* in any particular case. From an examination of these authorities we reach the conclusion that testimony in a chancery case may be taken orally before the court, by an examiner appointed by the court, before a regular master in chancery, or a master *pro hac vice* appointed by the court, or by a commissioner or commissioners. We are further of the opinion that where the court appoints or orders some person to take the testimony in a chancery case it makes no material difference whether such person be styled or designated in such order an examiner, a master, commissioner, or any other appropriate name, or whether any official title be given him in the order or not. Especially is this principle applicable in the instant case for the reason that said E. P. Smith was appointed to take said testimony at the request of the defendant, who was the complainant in said divorce suit. We are further of the opinion that a person so appointed by the court to take the testimony of witnesses

has the authority to administer an oath to witnesses examined before him. The authority to take testimony carries with it the power and authority as well as the requirement to administer oaths to the witnesses. *Peters v. United States,* 2 Okl. 116, text 121, 33 Pac. Rep. 1031, and authorities there cited; *Potier & McCoy v. Barclay,* 15 Ala. 439; *Adams v. Graves,* 18 Pick. 355; *Commonwealth v. Smith,* 11 Allen 243; *Ford v. Rockwell,* 2 Colo. 376. See *Ex Parte J. C. H.,* 17 Fla. 362, text 369. The irregularity or defect, if any such existed in the appointment of the examiner, was waived by the defendant in proceeding to have his testimony taken in said divorce suit by the officer so appointed, at his request, by the court, in using said testimony so taken before the court as a basis for the relief which he sought in his bill and in obtaining a final decree thereon. See *Howard v. Sexton,* 1 Denio, 440; *Maynard v. People,* 135 Ill. 416, 25 N. E. Rep. 740; *In re Smith,* 110 Mich. 435, 68 N. W. Rep. 228, the last two cited cases being actions for perjury, hence especially applicable. Also see *Greene v. People,* 182 Ill. 278, 55 N. E. Rep. 341, where it was held that "the legality of the appointment of a master in chancery or his power to administer an oath can not be questioned on the trial for perjury of one who, it is alleged, testified falsely before him." *State v. Williams,* 61 Kan. 739, 60 Pac. Rep. 1050.

The third ground of said motion is as follows: "Because it has not been proven that the defendant ever made oath to the statements alleged in the indictment to have been made by him." In passing upon this ground it is sufficient to state that the testimony of said defendant, as returned by said Smith as taken before him, duly signed by both said Smith and said defendant, who is said therein by said Smith to have been duly sworn by him, is at least *prima facie* evidence that the defendant did make oath thereto. 2 Bishop's New Crim. Proc., sec. 933c; 2 McClain's Crim. Law, sec. 887; *Greene v. People, supra; Rex v. James,* 1 Showers, 397; *Rex v. Morris,* 2 Burrows 1189;

*Rex v. Benson,* 2 Campbell, 508; 2 Wharton's Crim. Law, secs. 1309, 1312; *State v. Madigan,* 57 Minn. 425, 59 N. W. Rep. 490; *Reg. v. Turner,* 2 Carr & Kir. 732; *Rex v. Spencer,* 1 Car. & P. 260; *Commonwealth v. Warden,* 11 Met. 406; 1 Greenleaf on Ev., sec. 512; 2 Roscoe on Crim. Ev. (8th ed.) *844; *People v. Sutherland,* 81 N. Y. 1. This ground could have formed no basis for striking out said evidence.

There is no fourth ground in said motion, and the fifth ground thereof is as follows: "Because the part of the record introduced in evidence purporting to be the evidence of the said George L. Markey, is not the same record that was filed in evidence in the said divorce proceedings."

The only basis for said ground, as shown by the bill of exceptions, is that when the testimony of the said defendant, taken in said divorce suit by the said Smith, was originally filed in the clerk's office it contained the following statement as having been made by the defendant: "I am a resident citizen of the State of Florida and have been all my *live.*" However, the said Smith, before whom the testimony of the defendant had been taken, had testified that in giving in said testimony before him the defendant had used the word "life" and not the word "live" and that he, the said Smith, had changed the word "live" to "life" after the testimony was filed in the clerk's office in order to make sense out of said sentence, and that it might speak the truth. The change of the letter v in the word "live" to f so as to make the word "life", makes no material change in the meaning of the sentence and the writing of the letter v was evidently a mere clerical or typographical error. While it may have been an irregularity for the examiner to make such an alteration or change in said testimony after the same had been filed by him, still, as we have said, it was not a material change and no harm could result to the defendant therefrom. Certainly this slight change would not have warranted the court in striking out said evidence.

The sixth and last ground of said motion is as follows:

"Because it has not been proven that the court in which said oath was alleged to have been made had jurisdiction of the cause wherein said oath was alleged to have been made."

We are of opinion that this ground is without merit. As was said in *Maynard v. People, supra,* seventh headnote: "Although a tribunal must have jurisdiction of the cause or proceeding before perjury can be committed therein, yet when there is a defect which renders the proceeding void-able, only, and such proceeding is amendable, or when the defects are waived by the parties and the cause is heard on the merits then perjury may be committed." See *Smith v. State,* 31 Tex. Crim. Rep. 315, 20 S. W. Rep. 707; *State v. Molier,* 1 Dev. (N. C.) 263; *Regina v. Berry,* Bell's Crown Cases, 46. Also see especially *People v. McCaffrey,* 75 Mich. 115, 42 N. W. Rep. 681, the third headnote of which is as follows: "Where a bill for divorce contained sufficient allegations to give the court jurisdiction and to warrant the relief sought, if true, the fact that, upon trial of the complainant for perjury in swearing to said bill, it appeared that neither party had resided in this State for the *statutory year* will not bar a conviction." See, also, *Stewart v. State,* 22 Ohio St. 477. An instructive note upon this point will be found in 54 L. R. A. 513, *et seq.* We would also refer to 2 McClain's Crim. Law, sec. 858, and authorities cited in note 5 on page 82.

The bill in the divorce suit alleged that the defendant, Markey, was at the time it was filed (July 15, 1901), and had been for two years and over next immediately preceding the commencement of the suit, a resident citizen of the State of Florida. The constitution of 1885, art. V, sec. 11, invests the Circuit Courts with exclusive original jurisdiction in all cases in equity. Section 1477, Rev. Stats. of 1892, provides that "suits for divorce shall in all cases be by bill in equity." Section 1478, Rev. Stats. of 1892, as amended by chap. 4726, act approved May 19, 1899, provides that "In order to obtain a divorce the complainant must have resided two years in the State of Florida

before filing the bill, except where the defendant has been guilty of an act of adultery in this State, then any citizen of this State may obtain a divorce at any time and the two years' residence shall not be required of such complainant." The bill in the divorce suit did not allege adultery as a ground for divorce, consequently the two years' residence was required to be alleged and proven to enable defendant to obtain the divorce. The Circuit Court had jurisdiction of the subject-matter of the divorce, and in the proceeding to obtain it to take testimony upon the question of the two years' residence alleged. If it should be conceded that the jurisdiction of the Circuit Court to grant the divorce depended upon the truthfulness of the allegation with respect to residence as contended by plaintiff in error, still the allegation of such residence gave the court jurisdiction to inquire as to its truthfulness, and false swearing upon the inquiry had in respect thereto would be perjury. In other words, we might admit that if the allegation with respect to residence was untrue, the decree of divorce granted upon false testimony sustaining its truth would be void, and yet hold the party giving the false testimony guilty of perjury, for the court having jurisdiction over the matter of divorce and actions therefor necessarily had jurisdiction to take testimony concerning allegations essential to the right to grant it, and false testimony respecting these matters will be perjury, even though the decree of divorce should be held to be void for the reason that in fact these allegations were untrue.

Having reached the conclusion, as has been already stated, that the several motions to strike out the record of said divorce suit should have been denied, if for no other reason, because they were too broad, we might well have refrained from discussing in detail the various grounds thereof. However, we proceeded to consider said grounds under this assignment for the reason that the points made thereon arise under other assignments, and it was conve-

nient to dispose of them now rather than later on in this opinion.

The second error assigned is as follows: "That the court erred in admitting the testimony of E. P. Smith that the defendant, George L. Markey, in testifying in the case of *George L. Markey v. Lou Markey*, bill for divorce, used the word 'life' instead of the word 'live' as shown by the written testimony in the sentence 'I am a resident citizen of the State of Florida and have been all my live.'" We have practically already disposed of this assignment in considering the first. If any error was committed therein it was harmless to the defendant, as the legal significance of said sentence was not changed by the alteration of the word 'live" to "life". See 2 Amer. & Eng. Ency. of Law (2nd ed.) 185.

The third error assigned is as follows: "That the court erred in admitting the testimony of the witness, D. M. Smith, that the defendant, George L. Markey, voted at an election held in Valdosta, Georgia, on the 6th day of November, 1900, and not requiring the State of Florida to produce a certified copy of the poll list of that election and such other records as will show who voted in that election."

We find from the bill of exceptions that no such objections were made at the trial to said testimony as are stated in said assignment, the objection made at the trial being as follows: "Objected to by the defense, for the reason that in Georgia, there is a registration law and no one is entitled to vote in that State who is not duly registered. It is a matter reduced to writing and therefore is a matter of record, which is the best evidence." The objection as made was overruled by the court, an exception thereto noted, and this forms the basis of said assignment. As was said in *Hoodless v. Jernigan*, 46 Fla. 213, 35 South. Rep. 656, second headnote: "This court can not consider any objections to the admissibility of evidence, except such objections as were made in the court below; the plaintiff in error

being confined to the specific objections made in the trial court." Also see authorities cited in said opinion. We are of the opinion that the objection as made was properly over-ruled, and hence we find no error in the assignment. We would say further that we are of the opinion that the question as propounded to the witness, "Do you know whether George L. Markey voted on that day or not?" to which the objection was made, as stated above, was a proper question, seeking to elicit competent testimony.

The fourth error assigned is as follows: "That the court erred in sustaining the objection of the State Attorney to the question 'was Mr. Markey sworn?' and refusing to allowing the defendant to prove by the witness, E. P. Smith, that he was not sworn when he gave the testimony in the case of *George L. Markey v. Lou T. Markey,* bill for divorce."

The witness, E. P. Smith, had already testified on be-half of the State that he was the examiner who had taken the testimony of said defendant in said divorce suit and had written down said testimony and that the defendant in so testifying before him had stated: "I am a resident citizen of the State of Florida and have been all my life." The said witness, later on in the trial was called as a witness on behalf of the defendant and was asked by counsel for defendant the following question: "Mr. Smith, that is the evidence taken by you in the divorce suit which has been mentioned in the case of *George L. Markey v. Lou T. Markey,* is it?" to which question the witness replied, "yes sir." The witness was then asked the question, "was Mr. Markey sworn?" To the propounding of said question the State interposed the following objection: "Objected to by the State on the ground that it is recited by the jurat of the examiner that the evidence was sworn to and that the signature of the defendant is attached to it and he is now estopped from coming into this court and denying it, even if he had not sworn to it; further that it is immaterial whether the examiner actually admin-

istered an oath to the witness at that time, since
he signed it with his own signature, that is the witness
and defendant here, and he having stated that he did swear
to it. Further it has been shown by the defense in this
trial that this paper I now hold in my hand was used by
the defendant as evidence in his suit for a divorce, and he
did obtain his decree upon it." This objection was sus-
tained by the court.

As said in 2 McClain's Crim. Law, sec. 854, "It is
absolutely essential to the offense that the testimony or
statement relied on as constituting perjury was under an
oath actually administered. Without this there can be no
conviction for the offense. * * * If the false oath charged is a
written statement sworn to by defendant, it is immaterial
whether the oath was administered before or after the state-
ment was reduced to writing and signed. Indeed it is im-
material whether the writing was signed at all, the material
point being that the statement was sworn." Also see
authorities cited in the notes to said section. In *O'Reilly
v. People,* 86 N. Y. 154, text 161, it was said: "To make a
valid oath for the falsity of which perjury will lie, there
must be in some form, in the presence of an officer
authorized to administer it, an unequivocal and present act,
by which the affiant consciously takes upon himself the
obligation of an oath. The delivery in this case of the
signed affidavit to the officer was not such an act, and was
not made so by the intention of the one party or the sup-
position of the other." Also see *Case v. People,* 76 N. Y.
242; *Arnold v. Town of Middletown,* 41 Conn. 206.

As we have already seen, in considering the first error
assigned, the identification and production of the testimony
of defendant in said divorce suit, with proof of the signa-
ture of the defendant as well as of the signature of the
master thereto are *prima facie* sufficient to establish that the
defendant was actually sworn. Unless this presumption is
rebutted or overcome by other evidence, it would seem that
the evidence would be sufficient to warrant a conviction.

See *State v. Madigan,* 57 Minn. 425, 59 N. W. Rep. 490, and authorities there cited. Also see *Rex v. Turner, supra; Rex v. James, supra; Rex v. Benson, supra; Rex v. Morris, supra; Rex v. Spencer, supra.* In the instant case it is established by the evidence that defendant through his counsel procured the appointment of said Smith as an examiner to take the testimony of witnesses on behalf of defendant in a divorce suit instituted by defendant as complainant therein, that defendant testified as a witness in his own behalf before said examiner in said divorce suit, that his testimony was written down by said examiner and signed both by defendant and the examiner, and that said testimony was published by defendant and used by him in obtaining a final decree in said divorce suit. Unquestionably defendant would be estopped in any civil action from impeaching the validity of the decree so obtained by. him or from denying that he was sworn and testified as a witness therein. *Starbuck v. Starbuck,* 173 N. Y. 503, 66 N. E. Rep. 193, S. C. 93 Am. St. Rep. 631. Generally speaking, "conclusive presumptions and estoppels have no place in criminal law, for the purpose of establishing the body of the crime charged. The defendant may prove the actual facts in dispute, notwithstanding any admission or confession he may have made to the contrary." Abbott's Trial Brief, Criminal Causes (2nd ed.), 490. However, this doctrine of estoppel has also been applied in some criminal actions. See *State v. O'Brien,* 94 Tenn. 79, 28 S. W. Rep. 311, S. C. 26 L. R. A. 252; *State v. Spaulding,* 24 Kan. 1. We have found no case where it has been applied in any action for perjury, and we are not inclined to carry the doctrine to that extent. Was the examiner prohibited from testifying as to whether or not the defendant was actually sworn by him on the ground that his answer might contradict the jurat or certificate so signed by him and would, therefore, be against public policy? We have found no perjury case in which it has been so held, or where the question was raised. On the contrary, we have

found a number of authorities in which the officer was interrogated, without objection, as to whether or not the oath was administered by him. See *Case v. People, supra; Rex v. Benson, supra; Reg. v. Barnes,* 10 Cox Crim. Cas. 539; Bishop's New Crim. Proc., sec. 933c; *State v. Madigan, supra.* It has not been made to appear to us why in a perjury case, under certain circumstances, such an officer may not be interrogated either by the State or the defendant fully as to the facts and circumstances connected with the alleged swearing of the defendant. In the instant case it will be observed no question has been raised as to the identity of the defendant, or of his testifying in said divorce suit, his signature to said testimony as well as the signature of the examiner and the publishing and use of said testimony by the defendant in order to obtain the final decree in said divorce suit. It should also be borne in mind that in the written testimony of the defendant so introduced in evidence it is expressly recited that the defendant was "duly sworn" and also that said testimony was "sworn to and subscribed" by defendant before the examiner. This evidence, in the absence of any showing to the contrary, as we have seen, would be sufficient to warrant a conviction. *State v. Madigan, supra.* Also see 3 Greenleaf on Ev., sec. 192, 1 Bishop's New Crim. Proc., sec. 933c, and authorities cited in the notes thereto, to the effect that "If the affidavit were actually used by the prisoner in the cause in which it was taken, proof of this fact will supersede the necessity of proving his handwriting." "While the oath must be solemnly administered, and by an officer duly authorized, it is immaterial in what form it is given, if the party, at the time, professes such form to be binding on his conscience. * * * The fact that a person takes an oath in any particular form is a binding admission that he regards it as binding on his conscience." 2 Wharton's Crim. Law, sec. 1251. "The underlying principle evidently is that whenever the attention of the person who comes up to swear is called to the fact that the statement

is not a mere asseveration, but must be sworn to, and, in recognition of this, he is asked to do some corporal act, and does it, this is a statement under oath. And this, without kissing any book, or raising his hand, or doing any religious act." *United States v. Mallard,* 40 Fed. Rep. 151; *Dunlap.v. Clay,* 65 Miss. 454, 4 South. Rep. 118; *O'Reilly v. People, supra.*

While there is force in the argument that the defendant, having obtained an order appointing an examiner to take his testimony, procured the examiner to take what purported on its face to be the testimony of the defendant, which he signed and used as such in procuring his decree of divorce, should not be permitted to show that he was not in fact sworn, but, as we have seen, the oath being an essential element in the crime of perjury (2 McClain's Crim. Law, sec. 854), we are of the opinion that it was error to exclude testimony offered for the purpose of showing that no oath was in fact administered, and that the matters stated in the objections do not estop defendant from proving such fact. *O'Reilly v. People, supra.* The facts stated in the objections were sufficient to prove *prima facie* that an oath was actually administered, but the questions excluded were so framed as to admit of an answer showing the contrary, and this is sufficient without a further offer to prove that negative answers would have been given to the questions. *Buckstaff v. Russell,* 151 U. S. 626, 14 Sup. Ct. Rep. 448. If the defendant had admitted in his testimony upon the trial that he placed his signature to the purported testimony upon the invitation of the officer to do so if he swore to it, or that he assented by word or deed to a suggestion from the officer made at the time that he was swearing to the contents of a written document, this would have shown a swearing, within the meaning of the authorities, and the question propounded would perhaps have been improper in the form proposed, but he gave no such testimony, and neither did Smith, the examiner. If the written statement had been preceded by the declaration, "I,

George L. Markey, do hereby solemnly swear," etc., instead of "George L. Markey being duly sworn, says," we are not prepared to say that such statement signed by the defendant and authenticated by the officer in the presence of each other, would not have constiuted an oath, but such is not the fact in this case.   While the testimony is sufficient to show *prima facie* a swearing, it is not conclusive, and the court erred in excluding the question which sought to show that no oath was in fact administered.   *O'Reilly v. People, supra; Case v. People,* 76 N. Y. 242; *Carlisle v. Gunn,* 68 Miss. 243, 8 South. Rep. 743.

The fifth error assigned is as follows: "That the court erred in sustaining the objection of the State Attorney to the question asked the defendant, George L. Markey, as follows, to-wit: 'Did you swear to that testimony?' and thereby not allowing the defendant to show that he never swore to the testimony in the case of *George L. Markey v. Lou T. Markey,* bill for divorce, which is filed in evidence in this case."   The preceding question propounded to defendant as a witness in his own behalf by his counsel was: "Is that the *testimony* or not given by you in a certain cause which was then pending in this court?" and the answer of the defendant thereto was "It is."   The testimony referred to was the testimony upon which this prosecution was based, and had been handed to witness for examination and identification.   What we have said in considering the fourth assignment disposes of this assignment also, and we are of the opinion that the court erred in making said ruling.

The sixth and seventh assignments are as follows: "That the court erred in overruling defendant's objection to the question that 'If you have written or stated that Mrs. Lou T. Markey was alright, was it true?' and requiring the defendant to testify as to whether or not his former wife was alright."

"That the court erred in overruling defendant's objection to the question when did he join the Knights of

Pythias, and requiring him to state when and where he joined that order."

The first question was objected to on the ground that it was not in cross. The second on the same ground and upon the further ground that it was not the best evidence. Both questions were propounded to the defendant as a witness, upon cross-examination.

We see no useful purpose to be accomplished by discussing these assignments at length, but will state that we have carefully considered the same and find no reversible error therein.

The eighth assignment is as follows: "That the court erred in overruling defendant's motion to set aside the verdict and for arrest of judgment and to grant a new trial on the grounds set forth in the motion." Evidently in framing this assignment counsel for defendant failed to bear in mind the distinction between motions in arrest of judgment and motions for a new trial. However, we shall treat said assignment as being based upon the denial of defendant's motion for a new trial. This motion contains twenty-seven grounds, but nearly all of them were argued under the other assignments, as stated by counsel for defendant in their brief, and have already been considered and disposed of in this opinion. Some of said grounds are not proper in a motion for a new trial but could be considered only in a motion in arrest of judgment. The remaining errors are to the effect that the verdict was contrary to the evidence, contrary to the law and contrary to the charges of the court, and also that the court erred in giving certain enumerated charges. As a new trial will have to be awarded, it is neither advisable nor proper for us to express any opinion upon the evidence.

We have carefully examined the charges upon which error is predicated, and do not find any reversible error therein. All the charges requested by the defendant were given, and we are of the opinion that all of the instructions given at said trial, taken in their entirety, state the law

correctly and that the defendant was not prejudiced thereby.

The ninth error assigned is based upon the overruling of the defendant's motion in arrest of judgment. This motion contains eleven grounds, all of which attack the validity of the indictment. The grounds alleged are substantially as follows: The indictment does not allege that E. P. Smith was ever appointed examiner to take testimony; it does not allege that the testimony in the divorce proceedings was taken before Smith, examiner; it does not allege that defendant was sworn by Smith, examiner; it does not allege that the divorce proceedings were heard before Smith, examiner; it fails to allege that Smith, examiner, had authority to administer the oath to defendant; it fails to allege that Smith, examiner, had authority to administer the particular oath to defendant upon which the charge of perjury is predicated; it does not allege that Smith, examiner, had legal authority to entertain the hearing of the divorce case; it does not allege that the Circuit Court of Hamilton county had jurisdiction of the divorce case; it does not allege that the court had authority and jurisdiction to appoint E. P. Smith as examiner to take testimony in the divorce suit; an examiner has no power or authority under the laws of Florida to administer an oath; the indictment does not allege that the ground of divorce charged in the bill for divorce was not adultery and if the ground alleged was adultery then the allegation of two years residence respecting which the alleged oath was taken would be immaterial. What we have already said in discussing other assignments of error disposes of several of these grounds adversely to the contention of the plaintiff in error. Other objections are untenable as can be seen from a simple reading of the allegations of the indictment, in connection with the objections. We see nothing to be accomplished by an extended discussion of these several grounds. We have given the same careful consideration and are of the opinion that the indictment is

sufficient to withstand the assault made upon it. It was not necessary to allege that a divorce was not sought on the ground of adultery. The allegation that it became and was a material matter respecting which the oath was taken whether the defendant on July 15, 1901, had two years resided in Florida, was sufficient to show the materiality of the alleged false testimony, without alleging the facts showing its materiality. See *Brown v. State,* decided at the present term, and authorities therein cited.

The tenth and eleventh errors assigned have already been considered and disposed of under previous assignments.

It follows that for the errors found the judgment must be reversed, and a new trial awarded, and it is so ordered.

TAYLOR, C. J., and COCKRELL and CARTER, JJ., concur.
HOCKER, J., dissenting.

WHITFIELD, J., being disqualified, took no part in the decision of this case.

HOCKER, J., dissenting.—The order of the judge appointing E. P. Smith to take the testimony of complainant and other witnesses, introduced in evidence by the State, does not appoint Smith to any office known to the law. He is neither appointed master in chancery or examiner. As an individual, simply, he is directed to take the testimony. The order of appointment of an examiner or master is the commission under which such officers exercise statutory authority. *Bonner v. McPhail,* 31 Barb. (N. Y.) 106; *Stone v. Merrill,* 43 Wis. 72.

In my opinion examiners and masters are officials created by statute law, which prescribes and limits their authority, powers and duties. Sections 1428 to 1443 inclusive, Rev. Stats. 1892. The authority, powers and duties of these officers like those of a clerk or sheriff are brought into operation by a proper appointment to the of-

fice. The functions flow from the office, and not the office from one or more of the functions. A judge can not create official functions, though he may bring them into operation by a proper appointment. The fact that Smith signed his name as examiner, and that the judge in his final decree recites that the cause came on to be heard upon the report of the testimony taken by the examiner, should not be given a retroactive effect and make a thing criminal which was not criminal when it was done. *Bonner v. McPhail, supra.* Furthermore if it be proper to resort to inferences and implications, to discover the effect of the order of the judge, from the duties conferred upon Smith, how is it to be determined from the order whether the judge appointed Smith an examiner, rather than a master in chancery? Both are authorized by statute to take the testimony of witnesses, and there is not a word in the order which would indicate one, rather than the other. It follows, therefore, that the charge in the indictment that Markey was sworn by and before Smith, examiner, is not even proven by a preponderance of the evidence. The cases cited in the majority opinion to sustain its view, are in my opinion, absolutely lacking in similarity or analogy to the case at bar. In each of them except one, some officer was named to perform functions. In the excepted case, *In re Fifty-four First Mortgage Bonds,* 15 S. C. 305, the appellate court held that inasmuch as certain persons were directed by an order to do certain things, and that as these things were appropriate to the office of receiver and as they were appointed in response to a motion for a receiver, it was inferred that the order was to be construed in connection with the motion and prayer of the bill. In the case at bar no such motion appears. Only four of the cases cited are criminal cases (perjury). The rest are civil. The case of *Mann v. Jennings,* 25 Fla. 730, 6 South. Rep. 771, is squarely in line with *Harding v. Handy,* 11 Wheat. 103, in which Chief-Justice MARSHALL used the word "commissioner" as equivalent to "master in chancery;"

and with *Dean v. Emerson,* 102 Mass. 480, to the same effect; and with *Morris Canal and Banking Co. ads. State,* 14 N. J. L. 428, in which the word "commissioner" is shown to be a "generic" one embracing "such persons as have commissions, letters patent or other lawful warrant to examine matters, or to execute any public office." But these cases are unlike the one at bar, where no official cognomen of any sort is used. Moreover the effect to be given irregularities in taking testimony is different in civil cases from the effect given in criminal cases. In civil cases irregularities may be waived, and the oath of witnesses may be waived, but I have found no case which holds that perjury can be assigned in such testimony. *Phillipi v. Bowen,* 2 Pa. St. 20, opinion by Chief-Justice GIBSON; *State v. McCrosky,* 3 M'Cord (S. C.) 308; *State v. Jackson,* 36 Ohio St. 281; *State v. Dreifus,* 38 La. Ann. 877; *Hood v. State,* 44 Ala. 81; *Commonwealth v. Hillenbrand,* 96 Ky. 407, 29 S. W. Rep. 287; *Walker v. State,* 107 Ala. 5, 18 South. Rep. 393; *United States v. Bedgood,* 49 Fed. Rep. 54; *Lamden v. State,* 24 Tenn. 82; *Straight v. State,* 39 Ohio 496.

To constitute perjury the oath must be taken before a competent tribunal, person or officer *lawfully constituted, elected or appointed,* 22 Am. & Eng. Ency. Law (2nd ed.) 683; *Craft v. State,* 42 Fla. 567, 29 South. Rep. 418; 1 Hawkins' Pleas of the Crown, 431; 2 Bishop's Crim. Law, sec. 1020.

In the case of *State ex rel. Ross v. Call,* 39 Fla. 504, 22 South. Rep. 748, this court held that a Circuit judge could not amend, annul or modify a rule of practice made by this court, or make one unless such a rule was necessary to enable him to exercise his constitutional functons where the common law, or rules enacted by legislative authority, failed to provide a necessary method of procedure. As Smith was not exercising the duties of examiner under such circumstances of reputation or acquiescence as were calculated to .induce people without inquiring to submit to

or invoke his action, supposing him to be the officer he assumed to be," he can not be said to have been "a *de facto* examiner." *State ex rel. Robert v. Murphy*, 32 Fla. 138, 13 South. Rep. 705; *Hall v. Manchester*, 39 N. H. 295; *State v. Wilson*, 7 N. H. 543.

By way of recapitulation, then: First, Smith was not appointed to any official position to which by law the power to administer an oath is attached, directly or indirectly; second, if we are left to implications, the implication that he was appointed master in chancery is just as strong as the implication that he was appointed examiner, and hence the indictment is not sustained by even a preponderance of the evidence; third, Smith was not a *"de facto* examiner;"* fourth, it follows, therefore, that Smith had no legal authority to administer an oath to Markey upon which perjury could be assigned, and that for this reason the judgment of conviction should be reversed.

In all other respects I agree with the majority opinion.