## C. E. BERRY v. STATE.

No. A-2830—Opinion Filed Feb. 16, 1920.

(187 Pac. 248.)

(Syllabus.)

INDICTMENT AND INFORMATION—Duplicity—Information for Issuing Fraudulent Checks. The information in this case in one count charges that the defendant gave R. C. B. three fraudulent checks as follows, to wit, one for $42.76, one for $35.06, and one for $2.75, each of said checks bearing even date of issue; but it is not averred that all of said checks were given at one and the same time and were one transaction. Held, that the information was duplicitous, and the demurrer interposed to it on that ground should have been sustained.

*Appeal from District Court, Cleveland County;*
*F. B. Swank, Judge.*

Clarence Earnest Berry was convicted of issuing fraudulent checks, and he appeals. Reversed and remanded.

*Warren K. Snyder,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

ARMSTRONG, J. The plaintiff in error, Clarence Earnest Berry, hereinafter called defendant, was by information charged with the issue of fraudulent and bogus checks, and convicted and sentenced to imprisonment in the penitentiary at McAlester for a term of one year and one day. To reverse the judgment he prosecutes this appeal.

The charging part of the information is as follows:

"That on the 20th day of May in Cleveland county, state of Oklahoma, J. M. Berry and Earnest Berry late of said county, and within the jurisdiction of this court, did unlawfully, maliciously, feloniously, fraudulently, designedly, with the intent to cheat and defraud one R. C. Berry out of his property by means of false pretenses and color and of false and fraudulent writings and tokens and false and fraudulent statements and representations knowingly made, obtain from the said R. C. Berry property consisting of poultry, butter and eggs of the value of $80.57 giving him the said R. C. Berry in exchange for said property three false and bogus checks, which said checks are in words and figures as follows to wit: 'Capitol Hill, Oklahoma 5—2—1914, pay R. C. Berry or order the sum of $42.76. J. M. Berry, Jr., & Co., by J. M. Berry, Manager, to the State Bank of Capitol Hill Okla.'—and the other two checks in all respects the same as the above-described

check except they were for the sum of $35.06 and $2.75 respectively. And the said R. C. Berry believed the said checks to be good and valid checks and relying upon the same as such, though false and bogus and fraudulent, was induced to deliver and did then and there deliver to the said J. M. Berry, Jr., & Co., and Earnest Berry the property so as aforesaid in exchange for said three checks, whereas in truth and in fact they the said J. M. Berry, Jr., & Co. did not then and there have upon deposit in said Capitol Hill State Bank of Capitol Hill, Okla., funds to their credit with which to pay said checks and did not then and there have a credit with said bank sufficient to pay said checks, as they the said J. M. Berry, Jr., & Co. and Earnest Berry then and there well knew, and were not authorized to draw said checks upon said bank as they the said J. M. Berry, Jr., & Co., and Earnest Berry with the unlawful and felonious purpose and design to then and there cheat and defraud the said R. C. Berry out of his property."

The defendant demurred to the information upon the grounds: (1) That said information does not state facts sufficient to charge a public offense; (2) that the said information and in one count attempts to charge more than one offense, to wit, three separate and distinct offenses. The court overruled the demurrer, and the defendant excepted.

Thereupon the defendant filed a motion to require the state to elect upon which of the charges they would try the defendant, which said motion the court overruled, and the defendant excepted.

The uncontradicted evidence is: That J. M. Berry & Co. were for several months prior to May 20, 1914, engaged, in the city of Oklahoma, in buying chickens, eggs, and butter, and in the territory adjacent to the said city, and that on the 20th day of May, 1914, it having been

made known to the defendant that a check previously given R. C. Berry by the defendant had been dishonored and returned, the defendant gave the said R. C. Berry a check for $42.06 on the State Bank of Capitol Hill in payment of said dishonored check, and bought in Norman, Okla., from one Forehand, who was a clerk for the said R. C. Berry, chickens, eggs, and butter, and gave in payment for same a check to R. C. Berry on the State Bank of Capitol Hill, for $35.06, and that the defendant then and there left the place of business of the said R. C. Berry and transacted other business with other merchants in said town, and later returned to the said place of business of the said R. C. Berry on the same day and purchased from the said R. C. Berry another case of eggs or some "friers," for which he gave the said R. C. Berry another check on the State Bank of Capitol Hill for $2.75, and that there was nothing else that induced the said clerk of the said Berry and the said Berry to part with the property for which the said checks were given, except their reliance upon the genuineness of the said checks, and that, had they known that the said checks were not genuine, they would not have parted with the property for which the said checks were given, and that none of the said checks were signed by the defendant, but were signed by stencil "J. M. Berry, Jr., & Co.," to which was added in writing, "By J. M. Berry, Jr., Mng.," and that the defendant just before delivering said checks entered on said checks in pencil the amount of each of said checks and the name of the payee. That all of the said checks were deposited in a bank at Norman, Okla., and went through Kansas City, and on the 23d day of May, 1914, were presented to the State Bank of Capitol Hill and protested for want of funds. That on the close

of business on May 19, 1914, J. M. Berry, Jr., & Co. had on deposit with the said bank of Capital Hill $11.43, and on the 20th day of May, 1914, deposited $136.25, and had at the close of business that day $144.69. That on May 21st they checked out $141.69, leaving a balance in their favor of $2.63, which amount, four months thereafter, was checked out. That their account in the said bank started on May 16, 1914, and practically ended May 21, 1914, and that previous to May 16, 1914, they had their account with the First State Bank of Oklahoma City and had stopped doing business with said bank on account of their funds having been garnished on an old judgment against J. M. Berry, Jr. That J. M. Berry, Jr., & Co. had been extensively engaged in buying chickens, eggs and butter, paying for the same with checks, all of which were paid except the three given R. C. Berry. That checks given D. J. Pecket, dated May 19, 1914, for $10.53, to E. O. Whitenall, dated May 16, 1914, for $48.50, to McKinney Bros., dated May 20, 1914, for $29.75, to E. O. Whitenall, dated May 13, 1914, for $———, each of said checks being drawn on the State Bank of Capitol Hill, and a check to S. H. McCall drawn by J. M. Berry, Jr., on the First State Bank of Oklahoma, were not paid for want of funds and were introduced in evidence against the objection and exception of the defendant. That on the 22d day of May, 1914, the defendant was arrested and carried to Norman, and that thereafter the defendant left the state and was again arrested in Little Rock, Ark., and returned to this state and held for trial in this case. That J. M. Berry, after being arrested in this case, had disappeared, and his whereabouts had been unknown for nearly two years. That during the time J. M. Berry, Jr., & Co. did business with the State

Bank of Capitol Hill, their deposits amounted to $2,000 to $2,500. That the defendant had no transactions with and was unknown to the said bank, and that the said bank did not know and had not been informed who was the company in the firm of J. M. Berry, Jr., & Co., and that the defendant previous to this case had never been charged with criminal offense.

We are of the opinion that the information, by failure to aver that all of said three checks were issued at one and the same time, charges more than one offense. Each transaction involving the checks, if it issued as averred in the information, constituted a distinct criminal offense. The information, therefore, is duplicitous, and the court committed reversible error in overruling the demurrer thereto.

"An indictment is bad for duplicity that charges two distinct offenses in one court—that is, uttering a check known to be forged, and the forging of the indorsement thereon, and a demurrer thereto should be sustained." *Wells v. Territory*, 1 Okla. Cr. 469, 98 Pac. 483.

In the instant case, the information charges the issuance of three separate checks, each for a different amount, and does not aver that said checks were issued at one and the same time and constituted one transaction, while the undenied evidence shows that said three checks were not issued at the same time, and were issued for different transactions. If the information had alleged that the said three checks were issued at one and the same time, and as one transaction, the information would not be duplicitous. *Tucker v. State*, 8 Okla. Cr. 428, 128 Pac. 313.

The information being duplicitous, for the reason stated above, the judgment is reversed.

DOYLE, P. J., and MATSON, J., concur.