## J. E. MOORE v. STATE.

No. A-8847.   Oct. 25, 1935.
(50 Pac. [2d] 746.)

Priest & Belisle, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for the State.

DAVENPORT, P. J. The plaintiff in error, for convenience hereinafter referred to as the defendant, was convicted of embezzlement and his punishment fixed at a fine of $1,000, and imprisonment in the state penitentiary for a term of ten years.

The record in this case is voluminous, containing 930 pages. It is not deemed necessary to set out the testimony in detail. The testimony in narrative form that it is deemed necessary to incorporate in this opinion shows the following facts:

On or about the 22d day of June, 1933, the defendant in this case was president of the Capitol State Bank of Capitol Hill, Oklahoma City, Okla.; there was on deposit in said bank at that time $1,654.81, in small accounts running from a few dollars up in the neighborhood of one hundred dollars, known as inactive accounts; these accounts were carried separate from the active ledger, in ' what was known as a dormant ledger. The only record kept by the bank daily to keep the books in balance of these dormant accounts was what was known as a control sheet in the active ledger. Between the 22d day of June, 1933, and the 11th day of August, 1933, the defendant by the use of forged checks or debit memorandums extracted the said sum of $1,654.81 represented by these small inactive accounts, and that by reason of the defendant so withdrawing and extracting this amount the defendant, as president of the Capitol State Bank of Capitol Hill, embezzled said amount.

The state, in order to sustain its allegations, called in chief James M. Fitz, who was an assistant of the bank commissioner, who testified the bank closed on December 30, 1933, and his examination showed, considering the withdrawals, the bank was out of balance $1,654.81. The witness identified the bank's records on the report to the banking department showing the amount of the shortage.

Hoy Harshal and P. J. Winkler testified in substance to the same facts as did the witness Fitz. George Fox, a special assistant to the bank commissioner, identified a number of the exhibits as being in the handwriting of the defendant.

Lester Johnson, a bookkeeper in the Capitol State Bank of Capitol Hill, from 1925 until it closed, testified he was keeping one of the books at the bank at the time

it closed; that the inactive ledger was kept in the vault; the inactive accounts of the depositors were kept in a loose-leaf ledger; the books were kept in balance by a control sheet in the active ledger, and when a check or deposit slip against one of the inactive accounts came in for posting in the ledger kept by him he would post the debit slip against the control sheet, but that Earl Buttrill, cashier in the bank, would always demand the return of the debit memorandum, check, or draft against such inactive account, and that Mr. Buttrill or some one other than the bookkeeper posted them on the account affected.

Witness Johnson further stated, when State Exhibit No. 21 was presented to him, that he handled ten of the items contained in the exhibit, and the ones he handled he posted on the control sheet in the active ledger, and took the sheet representing that account out of the inactive ledger and gave it to Mr. Buttrill; that would be the last time he would have occasion to see the sheet; he was familiar with the handwriting of defendant Moore; upon examination of Exhibits 33 to 47, all except Exhibit 47 was in the handwriting of Mr. Moore, and Exhibit 47 was in the handwriting of Earl Buttrill; at the time Exhibits 33-47 came to his hands for posting he knew in whose handwriting they were, and that they were in J. E. Moore's handwriting; with the system employed when money was paid out of this the debit slips would be taken out of the teller's window, then the check would be run to the bookkeeper in order to balance that window.

"Earl Buttrill brought to me to post on his account sheet on the inactive accounts; Mr. Buttrill insisted on me not charging them to the individual customer but to extract them from the inactive list and bring them to him; I never saw the defendant Moore write any of the debit slips, nor did I see the defendant receive any of the money;

when I returned the ledger sheet to Mr. Buttrill that was the last I knew anything about the transaction."

Earl Buttrill, testifying for the state, says:

"I was cashier of the Capitol State Bank of Capitol Hill, Oklahoma City, Okla.; had been working in the bank since June, 1924, until it closed on December 30, 1933; Mr. Moore was the recognized head of the bank up until it closed, from September, 1932. I am acquainted with the handwriting of Mr. Moore."

Witness identified the 112 instruments marked as Exhibit 60 in the record, and stated the signatures in this exhibit were in the handwriting of Mr. J. E. Moore.

"I knew the inactive accounts were kept in a separate ledger which remained in the vault during the day; all other ledgers were brought out where the bookkeepers could use them. There were two teller windows in the bank at the time it closed; I worked at No. 1 chiefly; Lester Johnson was teller at window No. 2. All the employees in the bank occasionally worked at either of the windows, and all of the employees had access to cash in the windows during the day.

"Exhibits from 33 to 47 were first handled in No. 1 window; I handled them before they got out of the window; from there they went to the bookkeeper. Exhibits 33 to 46, inclusive, are in the handwriting of Mr. J. E. Moore. In handling these items Mr. Moore came to the window and took the money out on debit slips and came to me to get the money. Exhibit 47, being the McCourry account for $129, Mr. Moore and I went back to the inactive accounts and figured that Mr. McCourry had already checked out the money in some manner or other, and that the money really belonged to the bank. Mr. Moore always gave me the inactive ledger sheet to be checked against, and I made the file on them. Mr. Moore and I discussed keeping this inactive ledger sheet; the only way I could figure out the bank could keep the balance and know if the inactive sheet had been tampered with was to keep the sheet in a separate file with the balances thereon."

The witness further stated:

"I kept Exhibit 21 in a separate file; when the debit sheets were sent to the bookkeeper in order to keep his books in balance, they were charged off the control sheet in his active ledger, and I made a file of the inactive accounts which were so charged; I have seen Mr. Moore write debit slips and take out cash on them. I have received no promise of immunity or assistance of any kind from the banking department in consideration of my testifying in this case, although I was charged with a like offense in the district court of Oklahoma county."

Earl Buttrill was recalled by the state as a witness, and stated:

"I have worked for the bank nine years and six months; have been cashier since 1925; I was seventeen years old at the time I became cashier; held the position from 1925 until some time in April, 1926. In 1928 I was again elected cashier, and continued to hold that position until the closing of the bank."

Witness identified a number of exhibits offered in evidence as being in the handwriting of J. E. Moore.

Other witnesses were called to identify the signature of J. E. Moore, and a number of experts identified many of the exhibits as being in the handwriting of J. E. Moore.

The state introduced testimony showing the amount of the shortage, and the method by which the defendant drew the money from the bank.

The defendant, testifying in his own behalf, stated:

"I have lived in Oklahoma City the past 15 years; I first became president of the Capitol State Bank of Capitol Hill, Oklahoma City, in 1926, holding 80 shares of the stock at that time; I held that position until June or July, 1929, at which time I sold my stock and retired as president of the bank. Later I purchased 100 shares in the

bank, and about September, 1932, I again became president of the bank; when I was last connected with the bank, Joe Huckins, Jr., J. F. Hoffman, Otto Rose, Earl Buttrill, and a man by the name of Schroyer, and I were directors. Between 1929 and 1932 I was president of the Capitol Hill Mortgage & Investment Company. I state positively, after examining documents 33 to 46, that I did not write any, or either, of these exhibits, nor did I ever receive any consideration by reason thereof."

The defendant further stated:

"After I examined Exhibit 21, which is known in the record as the inactive ledger sheet alleged to have been tampered with, I received no part of the money extracted from any part of those balances. I performed the usual duties of the president of such institutions, and would usually make the loans; Earl Buttrill was cashier; his duties were principally to look after the clerical department, collect notes, and supervise the mechanical part of the bank; I knew where the inactive ledger was kept; I never took out any sheets from that ledger, nor did I write any checks or debit memorandums against them; I never handed such a debit memorandum or check, together with an inactive account, to Earl Buttrill, and received from him any money, debit slips, or memorandums; I never discussed with Earl Buttrill any method of handling the sheets which make up Exhibit 21, nor did I know any money was being taken unlawfully or illegally from the inactive accounts.

"The signature on State Exhibit 59 is my signature. I have examined State Exhibit No. 60, consisting of 112 memorandums; that portion of State Exhibit 60-A, the signature, is in my handwriting; I did not sign exhibit designated as State Exhibit 60-B; I at no time knew anything about a shortage in the inactive ledger account."

The defendant denied positively he had embezzled any of the funds of the bank or had any connection with the embezzling of any of the funds; he did not draw out or authorize any one to draw any funds from the inactive

accounts carried on a separate ledger as such. The defense offered testimony of a number of experts who attempted to show that many of the memorandums and vouchers offered in evidence by the state as being signed by the defendant were not the signature of the defendant, and sought to show that Earl Buttrill had been the man who had manipulated the inactive ledger accounts. Considerable testimony was introduced by the state as to a note that had been taken up by the Capitol Mortgage & Investment Company, of Capitol Hill, signed by J. E. Moore, which note was finally taken out of the bank or adjusted by some one. The state in introducing this testimony offered it for the purpose of showing the method of doing business by the defendant.

There was a shortage in the bank of $1,654.81, and the testimony of the state shows how the funds were withdrawn, and the testimony of the defendant also attempts to show that the withdrawal of the funds illegally was not done by the direction, connivance, co-operation, or acquiescence of the defendant.

The foregoing is all of the testimony that it is deemed necessary to recite in this opinion.

The defendant has assigned 12 errors alleged to have been committed by the court in the trial of his case, which he deems possess sufficient merit to warrant this court in reversing his case. The defendant in his brief, in presenting his argument in support of his assignment of errors, discusses the assignments under three propositions:

"First. That the information is duplicitous, ambiguous, vague, indefinite and uncertain and that there is more than one offense attempted to be charged therein, and instruction number eight is an erroneous statement of the law.

"Second. That the court admitted incompetent, irrelevant, immaterial, inflammatory and prejudicial evidence over the objection of the defendant, which said evidence pertained to alleged offenses not in any wise connected with or of any probative value in establishing the offense charged, and committed error in giving instruction numbered six.

"Third. That the court erred in giving instruction numbered seven, objected and excepted to by the defendant, in which instruction the court failed to instruct the jury, as a matter of law, that the witness Earl Buttrill was an accomplice and that his testimony, as a matter of law, must be corroborated."

The defendant urges that the information in this case is duplicitous, and attempts to charge more than one offense, and that by reason of its charging more than one offense in the same count the court erred in refusing to sustain his motion to dismiss and his demurrer to the testimony of the state.

In his argument the defendant relies upon Boultinghouse v. State, 24 Okla. Cr. 369, 218 Pac. 173, paragraph 1 of the syllabus in Berry v. State, 17 Okla. Cr. 186, 187 Pac. 248, and Carter v. State, 6 Okla. Cr. 232, 118 Pac. 264, as sustaining his position that the information is duplicitous, and charges more than one offense in the same count.

In answering the argument of the defendant, the state cites section 9193, O. S. 1931, and argues that this section is not a part of the regular Criminal Code, but was adopted in 1913, relating to banks and banking. Said section provides:

"Every officer, director, employee or agent of any bank, who embezzles, abstracts, or willfully misapplies any of the moneys, funds, credits or securities of the bank, with intent in either case to injure or defraud the bank or any

individual, person, company or corporation, or to deceive any officer of the bank, or the bank commissioner, or any agent appointed to examine the affairs of such bank, and any person who with like intent aids or abets any officer, director, employee or agent of such bank in any violation of this section shall be deemed guilty of a felony, and upon conviction thereof shall be punished by a fine of not less than five hundred dollars, nor exceeding five thousand dollars, and imprisonment in the penitentiary for a period of not less than five years nor more than 50 years; and the principal offenders and those aiding and abetting same may be charged in the same count, and separate offenses may be charged, in separate counts, in the same indictment and tried together."

The information setting forth the facts constituting the charge in this case, in part, reads as follows:

"That at different times from day to day during the time from June 22, 1933, to and including August 11, 1933, the said defendant, J. E. Moore, then and there being, did then and there charge these inactive accounts with the amount of the balance represented by same by drawing a check signing the depositor's name thereto or making a debit memorandum and filing the same in said bank as a charge against the aforesaid accounts without the knowledge and consent and the authority of said owners of the inactive accounts and thereby did create a shortage in the funds, credits and securities of said bank above named in the sum of $1,654.81, and did so use the same to his own personal use and benefit, all of which being done while he, the said defendant was president and an active managing officer of said bank and by said acts did embezzle, abstract, and willfully misapply $1,654.81 of the moneys, funds, credits and securities of the said above named bank with the intent on his part to injure and defraud said bank and all individuals, persons, companies and corporations therein interested of the sum of $1,654.81 and with the further interest on his part to deceive the other officers and directors of said bank and the Bank Commissioner of Okla-

homa and his agents appointed to examine the affairs of said bank. * * *"

In State v. Bunch, 23 Okla. Cr. 388, 214 Pac. 1093, 1094, this court said in part:

"In this case the embezzlement charged, in the amount of $5,845.61, was probably made up of a multitude of items derived from various sources. But one offense is stated, and it is not necessary in such a case to plead specifically a description of the individual items composing the aggregate. The manifest purpose of this statute was to make a blanket provision covering any or all such delinquencies, constituting but one offense."

In Davis v. State, 40 Okla. Cr. 231, 267 Pac. 674, in a prosecution under the same section of the statute this prosecution is based, but prior to its amendment by chapter 135, Session Laws 1923, now section 9193, O. S. 1931, in which case the court in the second paragraph of the syllabus stated:

"An information, based on section 4178, Comp. St. 1921, which alleges that an officer of the bank did abstract and willfully misapply the moneys, funds, and credits of the bank, is not duplicitous in alleging both an abstracting and willfully misapplying of the funds of the bank in the same count."

It is also held in the Davis Case that while the statute defines the offense and enumerates disjunctively the acts which, either committed separately or together, constitute the offense, all such acts may be charged in the same action conjunctively, since they each by themselves may constitute the offense, all together do no more, and constitute the same offense. Griswold v. State, 23 Okla. Cr. 136, 212 Pac. 1018.

In Willis v. State, 134 Ala. 429, 33 So. 226, 233, the Supreme Court of Alabama said, in part:

"The next important question raised upon the record is whether the prosecution could be compelled to elect to prosecute for one particular act of embezzlement. The evidence shows that the defendant was a station agent of the railroad company, and as such had full charge and control of its business at that station; was the custodian of all money arising out of the sale of tickets, collected all freight and express charges, made disbursements, and kept the books. Furthermore, the evidence tended to show that, by a system of false entries upon the books and other dubious practices, he endeavored to conceal his withholding of small sums of money which came into his possession from time to time by virtue of his employment; and, by a system of falsification, he managed to conceal * * * his acts of conversion of his employer's money."

The tendency of the evidence strongly supports the theory that the defendant's system constituted a series of withholding of his principal's sum of money for the purpose of ultimately acquiring a large sum. Where this is the case the doctrine of election does not apply since a series of acts would constitute but one offense. Fulkerson v. State, 17 Okla. Cr. 103, 189 Pac. 1092; Carl v. State, 125 Ala. 89, 104, 28 So. 505; Brown v. State, 18 Ohio St. 496, 513; State v. Wetzel, 75 W. Va. 7, 83 S. E. 68, Ann. Cas. 1918A, 1074; State v. Peters, 43 Idaho, 564, 253 Pac. 842; State. v. Noland, 111 Mo. 473, 19 S. W. 715.

In line with the authorities cited, we hold that the information properly stated facts sufficient to advise the defendant of the charge against him, and the court did not err in overruling his motion to dismiss and his demurrer to the information on the ground stated in the motion and the demurrer. No motion was made by the defendant to require the state to elect on which of the items alleged to have been embezzled it would ask for a conviction; the defendant evidently treating the information

at the time he went to trial as being sufficient to properly charge an offense against him.

The information in this case was drawn on the theory that defendant had committed but one offense, and that he as officer of the bank had failed to account for funds received by the bank by reason of a series of petty and continued conversions of the money in small sums manifestly difficult, if not impossible, to prove. Such an information in a case of embezzlement is not only permissible but is supported by the highest authorities in construing statutory regulations, similar to ours relating to misappropriation or embezzlement of trust funds coming into the possession of the defendant as an officer of the bank.

There are authorities which hold that where the crime consists, not in embezzlement of a single definite quantity of coin or bills, but in a failure to account for a number of small sums, a series of petty and continuous peculations, where it would manifestly be impossible probably for the defendant himself, but much more for the prosecution, to state what the money embezzled consisted of, an allegation of a certain amount is sufficient.

In the case of embezzlement by a public officer, or one intrusted with public funds, considerable latitude is permitted in the description of the money embezzled, for it is at times impossible to trace the particular funds in a case of an officer handling the funds coming through as many avenues and so many different individuals. The allegation of a particular gross amount is therefore usually held sufficient.

The defendant, in arguing his proposition 2, earnestly argues that the court admitted incompetent, irrelevant, immaterial, inflammatory, and prejudicial evidence over

his objections, which evidence he says pertains to an alleged offense not anywise connected with or of any probative value in establishing the offense charged, and that the court committed error in giving instruction No. 6. The defendant further argues that the court abused its discretion in permitting the state to reopen its case after the announcement by the state that it rested, and permitted the state to introduce testimony in regard to other offenses not connected with or having any probative value in establishing the offense charged.

The defendant cites Welch v. State, 41 Okla. Cr. 207, 271 Pac. 172, and many other cases, which he insists sustain his contention that the court committed error in permitting the state to open its case and introduce evidence of a transaction which the defendant insists had no connection with the offense for which he was being tried.

The question now is, Do the facts in the record bear out the contention of the defendant that the testimony offered by the state is not connected with the offense for which the defendant was being tried? It appears from the record that the evidence to which the defendant objected was originally offered as a part of the state's case in chief, but upon insistent objections by the defendant such offer was by the court denied. However, the check in question was admitted by the court to show a sample of the defendant's handwriting.

The record further discloses that during the introduction of rebuttal testimony by the state the court announced that further consideration had convinced it that the offer which had been previously denied should have been allowed, and the court would now grant leave to the state to introduce the evidence as a part of its case in chief without prejudice to the rights of the defendant to introduce

testimony contrary thereto. The court permitted the state to introduce evidence showing that prior to the time the defendant came back as an official of the bank in 1932, the bank held a personal note of the defendant, which by various payments had been reduced to the sum of $2,000, which note of the defendant for $2,000 was held by the bank when he became president. It further appeared that the assumption of the presidency of the bank complicated the situation relative to the handling of his note; that on the 5th day of November, 1932, the said note was taken out and a note for the same amount executed by the Capitol Mortgage & Investment Company, with which the defendant had some connection, and was placed among the assets of the bank. On July 8, 1933, a check in the sum of $2,000, payable to the order of the bank, and signed, "Cap. Mtg. & Inv. Co., J. E. Moore," was charged against the account of the Capitol Mortgage & Investment Company, and the $2,000 note taken out.

The testimony further discloses that J. F. Hoffman, president of the Capitol Mortgage & Investment Company, and Otto Rose, a director of said corporation, testified that no authority was given the defendant to draw the check against said mortgage company. This transaction clearly shows that it was interwoven and connected with the defendant's transactions, and was a part of the scheme carried out by the defendant in the operation, management, control, and withdrawal of the funds of which he is charged with embezzling. This mortgage note transaction of the defendant being a part of the transaction of the defendant with the bank, it was properly admitted in evidence.

In discussing his proposition 3, the defendant insists the court erred in giving instruction No. 7, in which instruction he says the court failed to instruct the jury, as a

matter of law, that the witness Earl Buttrill was an accomplice, and his testimony, as a matter of law, must be corroborated. Instruction No. 7 is as follows:

"You are instructed that the prosecution in this case uses the testimony of a witness who may be culpably implicated in the commission of the crime of which the defendant is accused, that is, he may be one who knowingly and voluntarily co-operated or aided or assisted in the commission of the crime of which the defendant is accused; and whether or not he is such a person is a question of fact for you to determine from the evidence before you. If you believe from the evidence in the case that such witness is implicated in the crime charged in the information as above defined, then, in law, such witness is an accomplice, and you are instructed that a conviction cannot be had upon the testimony of an accomplice unless such witness be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof, but such other evidence, to be sufficient to corroborate the evidence of the accomplice, must tend to connect the defendant with the commission of the crime of which the defendant is accused."

The defendant insists that the court should have advised the jury that Earl Buttrill was an accomplice instead of giving instruction No. 7 as it did. With this contention we cannot agree. There is no doubt about the law being that if a witness testifies in a case, and the testimony shows he is an accomplice, he must be corroborated by other circumstances and facts before the jury would be warranted in finding a verdict of guilty. If the defendant in this case, after he heard the court give the jury instruction No. 7, felt that it was not a correct and sufficient statement of the law that should be given the jury by the court, it was his duty to prepare a special instruction set-

ting forth what he believed to be the law, and requesting the court to give it. The record does not show that the defendant made any such request.

This court in many cases has held that where the facts are undisputed or admitted the question as to whether or not the witness is an accomplice is generally one of law for the court, but where the evidence is conflicting as to whether or not the witness is an accomplice is a question of fact to be submitted to the jury under proper instructions. Moore v. State, 14 Okla. Cr. 292, 170 Pac. 519; Cudjoe v. State, 12 Okla. Cr. 246, 154 Pac. 500, L. R. A. 1916F, 1251; Jolliffee v. State, 21 Okla. Cr. 278, 207 Pac. 454.

The record discloses that the defendant in this case denied his guilt, and denied that he had signed many of the checks or debit memorandum slips, and that question was submitted to the jury as a question of fact based upon the conflicting testimony in the record. It is clearly shown by the record that the testimony of Earl Buttrill is fully corroborated as to facts sufficient to connect the defendant with the crime. Defendant's connection with said transaction was shown by the testimony of Lester Johnson, a bookkeeper in the bank, by Otto Rose, a director and former vice president of the bank, and by J. M. Fitz, with the banking department, and P. J. Winkler, also connected with the banking department. Other circumstances, checks, debit slips, and evidence by various witnesses show conclusively the guilt of the defendant, and under the evidence in this case, in our opinion, if the jury regarded its oath, it could not have failed to return a verdict of guilty. The evidence is sufficient to sustain the verdict. The defendant was accorded a fair and impartial trial. The instructions clearly, succinctly, and correctly advised

the jury as to the law applicable to the facts. There are no errors in the record warranting a reversal.

The judgment is affirmed.

EDWARDS and DOYLE, JJ., concur.