## J. C. BOWMAN v. STATE.

No. A-10555.   March 27, 1946.

(167 P. 2d 663.)

Cecil R. Chamberlin and W. G. Roe, both of Frederick, for plaintiff in error.

Randell S. Cobb, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, P. J.  The defendant, J. C. Bowman, was charged in the district court of Tillman county by information with the crime of manslaughter in the first degree; was tried to a jury who returned a verdict of guilty, but left the punishment to be fixed by the court; the trial court thereupon sentenced the defendant to serve a term of two years' imprisonment in the State Penitentiary, and he has appealed.

No complaint is made as to the sufficiency of the evidence to sustain the conviction, so a detailed review of the evidence will not be given.  However, a short statement of the facts is necessary in order to properly consider the various assignments of error presented in defendant's brief.

The defendant was a farmer who lived west of the town of Davidson, in Tillman county.  A neighbor of his, one Jake Hill, was being inducted into the Navy, on September 22, 1943.  The day before Hill's induction, he borrowed an automobile from one Glenn Collier and asked the defendant to go with him to Mangum to see Ruby

Snow, a married woman living at Mangum, with whom Hill had been keeping company. Her husband was overseas in the United States Army. Ruby Snow got into the car with the defendant and Hill at Mangum. They drove to Altus, then to Frederick, and were on their way to Bowman's house when they ran into a truck parked on the side of the highway where the occupants of the truck had been changing a tire. The deceased, Roy Phillips, was in front of the truck fixing to crank the motor when he was struck by the car, which was being driven by Bowman, with such force that Phillips was instantly killed. One of his legs was amputated.

Investigators from the sheriff's office and the Highway Patrol found several beer bottles in the car which was being driven by Bowman and also a pint bottle about one-third filled with whisky. The defendant was arrested about two and one-half hours later and witnesses for the state said that he was under the influence of intoxicating liquor at that time. Other witnesses for the state who were at the truck when the collision occurred, said that the car driven by the defendant was being driven at so fast a rate of speed that when it came over a hill about 350 yards away it reached the truck before the occupants could jump from it or the deceased could move from in front of the truck.

On behalf of defendant, defendant admitted that earlier in the morning when he and Hill drove to Frederick that they had drunk a bottle of beer or two and that later Hill bought a pint of whisky and they each took a drink. That they drank a glass of beer at Altus on the way to Mangum, but had not had any more to drink that day and that he was not under the influence of intoxicating liquor at the time of the collision. That

defendant drove the car after they left Mangum. Bowman testified that when he came over the hill just before the collision that he was not driving at an excessive rate of speed. That he was driving in the middle of the road and that as he approached the truck, the lights were switched on and were so bright that they blinded him. That he attempted to turn to the south and did not remember what happened after that until he woke up later in the doctor's office at Grandfield, where he had been taken by the officers.

It is first argued that the court erred in overruling defendant's demurrer to the information. The information, omitting formal parts, reads:

"* * * that J. C. Bowman did, in Tillman County, and in the State of Oklahoma, on or about the 21st day of September, in the year of our Lord One Thousand Nine Hundred and Forty-three, and anterior to the presentment hereof, commit the crime of Manslaughter in the First Degree in the manner and form as follows, to-wit: That, in the County and state aforesaid, on the day, month, and year aforesaid, he, the said J. C. Bowman, then and there being did, then and there, while under the influence of intoxicating liquor, unlawfully operate, drive and propel a Ford automobile upon a public highway, towit, upon State Highway No. 32, driving his said automobile in an easterly direction, and at a place on said highway approximately six miles east of the town of Davidson, in Tillman County, Oklahoma, and approximately three-quarters of a mile west of a store known as Wycoff's Store, and did, then and there, while so intoxicated as aforesaid, unlawfully drive and propel the same at a speed greater than reasonable and proper, and at a speed greater than would permit him, the said J. C. Bowman, to bring automobile to a stop within the assured clear distance ahead, and did, then and there unlawfully drive said Ford automobile on the left side of the road and keep said automobile to the left and to the

north of the center of the said highway, and fail to keep the same to the right and to the south of the center of said highway, and he, the said J. C. Bowman, did then and there, while so under the influence of intoxicating liquor, drive said automobile at approximately 70 miles per hour, and while operating, driving, and propelling said Ford automobile, as aforesaid, and at said place, did, wilfully, wrongfully, and unlawfully, feloniously, and negligently operate, drive and propel said Ford automobile with great force and violence at, against and into Roy Phillips then and there afoot on said highway, and who was standing immediately in front of a truck facing the west, and lawfully parked on said highway, and at, against and into the body of the said Roy Phillips, and into said parked truck, then and there pinning the said Roy Phillips against said truck, and thereby wounding, mangling, breaking and crushing the body of the said Roy Phillips, and crushing and cutting off one of his legs, of which wounds and injuries, he the said Roy Phillips, did then and there die; and so, he, the said J. C. Bowman, did then and there kill the said Roy Phillips, contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the state."

Counsel contend that this information is bad for duplicity, in that it charges two separate and distinct offenses in one count.

The information does not charge two offenses. It only charges the commission of one offense, towit, manslaughter in the first degree, but it does allege different acts which were committed by the defendant which would constitute the offense of manslaughter in the first degree.

In Moore v. State, 58 Okla.. Cr. 122, 50 P. 2d 746, 747, it is stated:

"Where a statute defines an offense and enumerates and describes the different acts or things which constitute the offense, all the said acts may be charged in a

single count conjunctively, since though each by itself may constitute the offense, all together do no more, and constitute but one and the same offense."

In Huckleberry v. State, 64 Okla. Cr. 396, 81 P. 2d 493, 494. it is held:

"Under a statute which defines a single crime, but which may be committed in a number of different ways, an information may be drawn setting out the different ways in a single count, and will not be duplicitous, if there is readily perceived connection between the things charged."

The test seems to be whether information charges more than one crime or whether it defines a single crime which may be committed in a number of ways. If it charges more than one crime in one count, the information would be bad for duplicity, but it is permissible to charge a single crime and set forth different acts which may constitute the manner and way in which the accused allegedly committed the offense.

The next assignment of error is that the court abused its discretion in permitting the state on rebuttal to recall the witness Ruby Snow, who had testified as a state witness in its case in chief, for the purpose of giving testimony which properly should have been introduced at the time of the first appearance of the witness.

When this witness was first called to testify, she was used primarily to establish the fact that the defendant was driving the automobile at the time the collision occurred. Her testimony was short and she was not asked whether the defendant was under the influence of intoxicating liquor. After the defendant had been interrogated by his counsel in his own behalf, he was cross-examined at great length by counsel for the state. He was ques-

tioned particularly as to places he had stopped on the road from Mangum to Frederick, and concerning his alleged drinking at different places. On rebuttal, Ruby Snow was recalled by the state as a witness and she contradicted the defendant in a number of matters. Her testimony concerning the places that the defendant stopped on the road from Mangum and as to his drinking at various places certainly was harmful to the defendant's case. Her testimony was not a rehash of the state's case in chief, but it did refute many of the things testified to by the defendant.

In the case of Tingley v. State, 16 Okla. Cr. 639, 184 P. 599, it is stated:

"It is discretionary with the trial court, in furtherance of justice, to permit evidence in rebuttal which would have been competent evidence in chief."

Counsel for defendant rely principally upon the case of Corliss v. State, 12 Okla. Cr. 526, 159 P. 1015, in which it is held:

"It is the duty of counsel for the state to introduce the testimony available to establish the charge against the defendant at the bar in the hearing in chief. The court should not permit a rehash of such testimony under the guise of rebuttal. Counsel for the state have no more right to reserve the principal testimony and introduce it under the guise of rebuttal, nor to rehash testimony introduced in chief under the guise of rebuttal, than the accused would have to reintroduce his testimony after the state had closed the rebuttal. In a strict sense, only such testimony which goes to contradict or rebut something proved by the defendant is entitled to be introduced in rebuttal. The discretion of the trial courts allowed by the law in this jurisdiction in this respect should always be exercised with these rules of fairness in view."

In Townsend v. Cotten, 180 Okla. 128, 68 P. 2d 790, 791, the Supreme Court of Oklahoma stated:

"Rebutting evidence is that evidence which has become relevant or important only as an effect of some evidence introduced by the other side."

In nearly every case, we find evidence introduced as rebuttal which might properly have been introduced in support of the case in chief, but this is not the sole test. The question which arises and is directed to the discretion of the trial court is whether the evidence offered in rebuttal is a rehash of the state's case in chief, or whether it pertains to some material issue which has become important because of effect of evidence introduced on behalf of defendant. Here we find testimony by a witness which directly refutes testimony offered by the defendant on several material matters. It was not a rehash of the state's case in chief, as there had been nothing introduced by the state contradictory to what the defendant testified concerning his movements during the evening on the road from Mangum to where the collision occurred, until the witness, Ruby Snow, testified in rebuttal. After he had completed his testimony, Ruby Snow was called and she did contradict the defendant on such matters as to where they stopped in Snyder and as to whether or not they stopped and went into a cafe at Altus, and concerning certain actions of the defendant at a skating rink at Frederick. We are unable to conclude from an examination of this record that the trial court committed an abuse of discretion in admitting this evidence as rebuttal.

It is next contended that the court erred in refusing to give the defendant's special requested instruction No. 8, which reads as follows:

"You are instructed, Gentlemen of the Jury, that if the killing of the deceased was the result of accident and misfortune, which occurred while the defendant was conducting himself in a lawful manner, and without any unlawful intention on his part, then he would not be guilty of the crime charged."

Insofar as the issue covered by said requested instruction is concerned, the trial court gave the following instructions:

"5. Manslaughter in the second degree is the killing of one human being by the act, procurement, or culpable negligence of another, which, under the provisions of the law, is not murder, manslaughter in the first degree, as heretofore defined, nor excusable or justifiable homicide.

"6. Culpable negligence is the omission to do something which a reasonable and prudent person would do, or the doing of something which such a person would not do under the same or similar circumstances.

"7. Excusable homicide, insofar as it affects this case, is homicide committed by accident and misfortune, in doing a lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent. * * *

"9a. The defendant, in support of his plea of not guilty, denies that he violated the law in any respect in driving his car at the time and place alleged in the information, but alleges that he was driving said car at a careful speed and in a careful and prudent manner, and that the accident was unavoidable on his part, but was caused by reason of the deceased standing in front of a Ford truck parked near the center line of said highway, at the place where the accident occurred, without the headlights being turned on said truck until the defendant was too close to said truck to check the speed of his car and avoid hitting the deceased.

"If you believe these facts, or have a reasonable doubt thereon, you will find the defendant not guilty."

In addition to these instructions, the trial court's instruction No. 12 told the jury that before the defendant could be convicted of manslaughter in the second degree, they must be convinced beyond a reasonable doubt that the killing was not excusable or justifiable homicide. Similar instructions were sustained in the case of Sweet v. State, 68 Okla. Cr. 44, 95 P. 2d 242.

Complaint is also made of the failure of the court to give the defendant's special requested instruction No. 4. Defendant's special requested instruction No. 4 is evidently copied verbatim from decisions of this court approving similar instructions and said requested instruction was a proper statement of the law concerning the question of culpable or criminal negligence as the proximate cause of the death of a deceased. However, we find that in instructions Nos. 6 and 12, the trial court sufficiently covered this issue. Requested instruction No. 10 is set forth in the brief, but no reason is advanced in the brief why the court erred in refusing to give said instruction, and we do not know of any reason why said instruction should have been given.

A question that has caused this court more concern in the disposition of this appeal is whether or not certain conduct on the part of the jury and the court, after the cause was submitted, had the effect of misleading the jury and causing them to return a verdict of guilty, under the belief that the trial court would give the defendant a suspended sentence. After the cause had been submitted to the jury and they had deliberated for a considerable time, they were returned into open court in the custody of the bailiff and the following proceedings were had:

"By the Court: Gentlemen, is there any question that comes up you think might be clarified? Any question you want to ask the court at this time? I don't know whether I can help. Juror: Well, the question has come up as to whether it could be a suspended sentence given and a fine. The Court: Of course, that's a matter the jury can't be concerned with at all. Under certain circumstances, the court can grant suspended sentences. The jury. has no power. That is given entirely to the court, and I doubt whether it could be in this kind of case at all. Mr. Counts: That's one of the things the jury should not consider. Mr. Chamberlin: As I understand the law, this is one of the offenses excepted. The Court: I don't like to discuss that before the jury because it is something they shouldn't consider. Gentlemen, you will be taken to supper, and come back as soon as you finish, within a reasonable time, and resume your deliberations."

The fact that the jury, after this colloquy occurred, returned a verdict of guilty of manslaughter in the second degree with the punishment to be fixed by the court, lends some support to the theory that the court unwittingly, by his remarks, led the jury to believe that the punishment might be suspended.

In connection with this proposition, we have carefully studied every word that was said by the court, the jury, and counsel at the time in question. There is certainly nothing said by the trial court which was improper or a misstatement of the law. As remarked by the court, the question of a suspended sentence was a matter with which the jury could not be concerned. Under the statute, 22 O.S. 1941 § 991, no person convicted of manslaughter is eligible for a suspended sentence. At the time this proceeding occurred, counsel for defendant was present. No objection or exception was taken to the remarks made by the court and there was no request that

the court make a fuller explanation to the jury as to the law pertaining to a suspended sentence. The jury did not make mention of the matter in their verdict. No recommendation for a suspended sentence was made as is often done by juries in similar cases. We have given particular attention to this question because of our desire to never approve a judgment of conviction that is obtained because of prejudice created by the state against accused or where the verdict is the result of confusion in the jurors' minds as to the law in the case caused by the giving of contradictory instructions or by oral statements by the trial court. Evidently, some of the jurors were not voting for a guilty verdict and the question had been raised in the jury room as to whether a suspended sentence and a fine could be given. We find no statement by the court or counsel made in the presence of the jury that would justify us in saying that the proceedings as herein disclosed were prejudicial to the defendant and were the direct cause, as urged by counsel for the defendant, of the conviction.

We have not undertaken to mention all of the various assignments of error set forth in defendant's brief, but have reviewed those of sufficient merit to require discussion. The case was well tried and hard fought. As is usual under such circumstances, the trial court might have made slight errors in some particulars in his handling of the trial, but, in looking at the case from every viewpoint, and considering especially the earnestness with which the prosecution was conducted and the diligence with which counsel for defendant fought in his behalf, the record is remarkably free from errors. Certainly, there are none which this court can say is of sufficient gravity to justify or require a reversal of the judgment of conviction.

211

The judgment of the district court of Tillman county is accordingly affirmed.

BAREFOOT, J., concurs. DOYLE, J., not participating.