Jackie C. CASTLE, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13426.

Court of Criminal Appeals of Oklahoma.

May 13, 1964.

Rehearing Denied June 10, 1964.

Earl Camp, Buffalo, for plaintiff in error.

· Charles Nesbitt, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Jackie C. Castle, hereinafter referred to as defendant, was charged by Information in the District Court of Harper County with the crime of Manslaughter First Degree. He was tried by a jury, found guilty and sentenced to 4 years in the penitentiary. He filed his appeal in this Court within the time prescribed by law asserting numerous

assignments of error, of which we will discuss in the order presented.

██ Defendants first contention is that he was denied a change of venue in violation of his constitutional and statutory rights. This will not need to be discussed at length as the law in Oklahoma is well settled on this point. Counsel for defendant cites only a dissenting opinion as his authority, while the majority opinion states the applicable law; Brown v. State, 50 Okl. Cr. 199, 296 P. 989:

"Under section 2966, C.O.S.1921 [39 O.S.1961 § 501], defendant is entitled to a change of venue because he cannot have a fair and impartial examination before the examining magistrate only where he files the affidavit required by such section before subpoenas are issued."

And, further:

"The statute fixes the procedure by which a change of venue may be had for a preliminary examination; the requirements of the statute are mandatory, and must be strictly construed. To entitle the defendant to a change of venue, the conditions must be complied with."

Also, see Schmulbach v. State, 53 Okl.Cr. 229, 9 P.2d 966; State v. Thomason, Okl. Cr., 345 P.2d 908.

██ In the instant case, the record does not reveal whether subpoenas were issued or not, and it is impossible to make a ruling on a point of law when the defendant does not furnish the proper record before us. If the subpoenas had not been issued, the defendant should have made this known in the record. McGowan v. State, Okl.Cr., 380 P.2d 274.

The next contention is the one most strongly urged by defendant in his brief, and on oral argument; that the Honorable Samuel K. Barton had no legal authority to sit as an examining magistrate on the date the preliminary examination was held.

The record before us shows that Judge Barton was appointed by the Chief Justice of the Supreme Court of Oklahoma first on April 10, 1962 for five weeks, and again on May 17, 1962, due to the illness of Judge Walker.

It is urged by defendant that upon the death of Judge Walker on the morning of the day of the hearing, that Judge Barton's appointment ceased and expired. He does not contend that the appointment was invalid, but only that the death of Judge Walker terminated it.

The authority for the appointment of a temporary county judge can be found in 20 O.S.1961 § 289, which provides:

"Whenever the county judge of any county in this State is unable to perform the duties of his office because of illness, absence from the county, or other disqualification, * * * the Chief Justice of the Supreme Court * * * shall designate any other county judge in this State * * * to preside over the county court in said county as a temporary judge in lieu of the county judge elected in said county and to transact any business pertaining to the office of county judge in said county, and said temporary county judge shall have the same authority and the same power as the regular judge."

The statute further provides that the order shall specify the length of time or the cases or matters in which the assigned judge is to serve.

██ This Court is of the opinion that the appointment of a temporary judge is not open to be questioned in a collateral attack. The appointment of the assigned judge would continue until such time as a permanent replacement would be appointed or elected, or until the specified time of the appointment expired.

This is the only conclusion that can be drawn from this particular set of facts. It would create an intolerable situation if every person arrested for a criminal offense could promptly switch the issue from that of his own guilt or innocence to the mere collateral one of the magistrate's title

to his office and his right to hear and determine the cause being presented against the accused.

The administration of law and government would be hopelessly entangled and delayed if a private citizen at his own pleasure could halt their orderly processes by questioning whether—for example—the school district, the township, the city, or the county had been lawfully organized; or whether the sheriff who served him with process; the assessor who valued his property; the council or board which levied the taxes; or the treasurer who sought to ·collect them had good title to their offices and had been properly inducted therein.

Such futile, collateral questions would not necessarily stop even there, there might even be a challenge of the judicial powers ·of this Court to review the judgment.

■ We adhere to and adopt the language used in a Kansas case, State v. Williams, 61 Kan. 739, 741; 60 P. 1050, in which it was stated:

"The acts of a de facto judge cannot be collaterally attacked, and his right to the office is not open to question except in a direct proceeding brought by the state; and this is true in a case where the officer is incapable of holding the office."

■ Defendant's next contention is that he was denied a speedy trial. He makes no showing that the delay had caused him to be prejudiced in any way. The record shows that the defendant asked for a continuance himself on the day the case was first set for preliminary. In Fike v. State, Okl.Cr., 388 P.2d 347, the Court said:

"The burden was on the defendant in support of his motion to dismiss to show that the laches was on the part of the state, through its prosecuting officers, otherwise the presumption is that the delay was caused by or with the consent of the defendant himself, and when on bail the defendant must demand a trial or resist a continuance of the case from term to term."

See also, Stroud v. State, 57 Okl.Cr. 273, 47 P.2d 883; Ex parte Meadows, 71 Okl.Cr. 353, 112 P.2d 419; and cases cited.

On page 165 of the casemade, it appears that defendant was allowed to "stand on his present bond", indicating that he was at liberty on bail and presumably remained so.

We do not think the judge abused his discretion in refusing the motion to dismiss for want of a speedy trial.

■ Defendant's fifth allegation is that the Information charges two misdemeanors by stating "while under the influence of intoxicating liquors and while operating said automobile at such excessive speed". This is erroneous, as the Information charges the crime of Manslaughter First Degree, as follows:

"* * * and within the jurisdiction of this Court, did unlawfully commit the crime of manslaughter in the first degree in the manner and form as follows; to-wit: that the defendant, Jackie C. Castle, was then and there willfully, wrongfully, unlawfully and feloniously operating and propelling a motor vehicle, to-wit: a 1958 Chevrolet sedan automobile upon a public highway while under the influence of intoxicating liquor, and did then and there drive said automobile at an unlawful speed, * * *".

Title 22, O.S.1951 § 404, provides:

"The indictment or information must charge but one offense, but where the same acts may constitute different offenses, or the proof may be uncertain as to which of two or more offenses the accused may be guilty of, the different offenses may be set forth in separate counts in the same indictment or information and the accused may be convicted of either offense, * * *".

In Payne v. State, Okl.Cr., 276 P.2d 784, this Court said:

"An indictment or information is not duplicitous when it charges only one offense or transaction but alleges different acts which were committed by

defendant in committing the offense charged."

See, also; Hill v. State, Okl.Cr., 266 P.2d 979; Bowman v. State, 82 Okl.Cr. 199, 167 P.2d 663; Moore v. State, 58 Okl.Cr. 122, 50 P.2d 746.

■ Defendant's fifth and final proposition is that the venue did not properly lie in Harper County for the reason that the defendant was traveling at an excessive speed on the Woodward-Harper County line and that when the road turned into Harper County, defendant missed the curve, thereby having the accident. He states that since there is no evidence which shows the defendant "operated" the vehicle within Harper County that venue should have been in Woodward County. This is assuming that the defendant did not have control of the car at any time when it entered Harper County. This we do not know, but it would make little difference, as this question is statutory, and clear cut. We refer to 22 O.S.1961 § 124, which states:

"When a public offense is committed, partly in one county and partly in another county, or the acts or effects thereof, constituting or requisite to the offense, occur in two or more counties, the jurisdiction is in either county."

A second statute is more specific, 22 O.S. 1961, § 134:

"The jurisdiction of a prosecution for murder or manslaughter, when the injury which caused the death was inflicted in one county, and the party injured dies in another county, or out of the State, is in the county where the injury was inflicted."

Under the statutes cited above, venue for this prosecution properly lay in Harper County.

There being no error meritorious enough to warrant a reversal of this conviction, and for the reasons stated above, the judgment and sentence of the trial court is hereby affirmed.

JOHNSON, P. J., and BUSSEY, J., concur.