Ernest Lee **POTTER** and Charles **William Cartwright, Appellants,**

v.

**STATE of Oklahoma, Appellee.**

**No. A–18098.**

Court of Criminal Appeals of Oklahoma.

June 19, 1973.

Paul D. Brunton, Public Defender, Tulsa, for appellants.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Linda Frye, Legal Intern, for appellee.

## OPINION

BRETT, Judge:

Appellants, Ernest Lee Potter and Charles William Cartwright, hereinafter referred to as defendants, were convicted in the District Court of Tulsa County, Case No. CRF 72–517, of Robbery by Force and Fear, and were sentenced to thirty years imprisonment in the State Penitentiary. Judgment and sentence was imposed on October 25, 1971, and this appeal perfected therefrom.

On appeal defendants contend that the trial court erred in overruling defendants' demurrer to the district court information in that more than one offense was charged there; that the trial court erred in overruling defendants' demurrer and motion for directed verdict at the close of the state's evidence in chief, based on state's failure to prove the corpus delicti, absent alleged incriminatory statements of the defendants; that the trial court erred in refusing Defendant Potter's requested instruction concerning the defense of abandonment; that the court erred in overruling defendants' numerous motions for mistrial, based on prejudicial statements made by the prosecutor during the course of the trial; that the court erred in submitting an instruction tending to show flight by the defendants shortly after the commission of the crime alleged against them, and that the trial court erred in overruling defendants' motion to suppress alleged incriminatory statements.

It was charged by information that on February 6, 1972, defendants did:

"wilfully and wrongfully, while acting in concert each with the other, rob one BALLZORA MAY FAST by wrongfully taking and carrying away certain money and personal property of value belonging to and in the possession of BALLZORA MAY FAST, and in her immediate presence, without her consent and against her will, said robbery being accomplished by said defendants then and there committing an assault and battery on said BALLZORA MAY FAST, by beating and striking the said BALLZORA MAY FAST with a heavy cane or crowbar and did then and there put the said BALLZORA MAY FAST in fear of immediate and unlawful injury to her person and overcame all her resistance and while so intimidating her did then and there wrongfully take and obtain from her the money and property aforesaid, . . ."

██ Robbery, is defined in Title 21 O.S.1971, § 791, as follows:

"Robbery is a wrongful taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

The information did contain a surplusage of words; however, considered in its entirety the information clearly specified the offense of Robbery by Force and Fear, under the foregoing statute.

██ In Payne v. State, Okl.Cr., 276 P.2d 784 (1954), this Court stated:

"An indictment or information is not duplicitous when it charges only one offense or transaction but alleges different acts which were committed by defendant in committing the offense charged." See also Hill v. State, Okl.Cr., 266 P.2d 979 (1954); Huckleberry v. State, 64 Okl.Cr. 396, 81 P.2d 493 (1938), and Bowman v. State, 82 Okl.Cr. 199, 167 P.2d 663 (1946).

The reference to "assault and battery" in the charge merely specified the means or manner by which the force and fear were accomplished. Therefore, we are of the opinion that the trial court did not commit error in overruling defendants' demurrer to the information as being duplicitous.

The facts of the case indicate that on February 6, 1972, at approximately 5:00 P.M., Judy Flynn, the adult granddaughter of Ballzora May Fast, was at the residence of Mrs. Fast. She had been straightening up her grandmother's house and left about 6:00 P.M. After receiving a call from her grandmother that she needed help, she returned to her grandmother's house about 7:35 P.M., accompanied by her mother and sister. She testified that when she arrived the second time the door was open and her grandmother was sitting in her reclining chair with her face cut and bleeding; and that her grandmother's face had started to swell. She further testified that her grandmother's cane was on the floor at the foot of her chair, that a crowbar was laying four or five feet from her chair, and that there was blood all over everything. ' The grandmother couldn't say anything understandable; but Miss Flynn testified that she said to her grandmother, "somebody beat you up, grandma, how did they get in . . . she [Mrs. Fast] told that she let him in." Miss Flynn also identified certain photographs as depicting her grandmother's house, inside and out, as well as her grandmother's cane.

Miss Flynn related also that upon her return to her grandmother's house an old radio she had observed earlier was missing; and a cigar box that contained her grandmother's "blood-pressure pills" was missing. None of the missing items were recovered. The radio was one Mrs. Fast was holding as security for a Ten Dollar loan to someone. This witness also testified that her grandmother had rented two rooms in her house to the two defendants and Roger Cartwright, a brother to defendant Charles Cartwright.

Zora Tyner, the sister of Judy Flynn, testified concerning the condition of the house, which coincided with that of Judy Flynn. However, when she testified concerning the incoherency of her grandmother's words, she related that "she always said them or they."

All of this testimony is related to defendants' second proposition, which asserts the state failed to prove the corpus delicti. Defendants cite Raybourn v. State, Okl.Cr., 339 P.2d 539 (1959), a forgery case, in support of their proposition. In that case, Raybourn asserted that the corpus delicti was not proved; and in discussing the question of corpus delicti this Court stated: "[D]irect and positive evidence of the corpus delicti is not indispensable. Like any other fact, the subject of judicial investigation, it may be proved by circumstantial evidence." The Court continued its discussion, stating "that the corpus delicti need not be established beyond a reasonable doubt, but it is sufficient if the evidence thereon be substantial. This may be done without connecting the defendant with the commission of the crime. The corpus delicti being established by proof other than the defendant's confession, the confession then becomes admissible for the purpose of connecting the defendant with its commission." 339 P.2d at page 546.

Thereafter, in Raybourn v. State, supra, the Court entered into a discussion of the evidence produced in that case showing that a forgery had in fact been accomplished. At page 547, the Court states, "thus, it appears the circumstances were sufficient to establish the commission of the crime of forgery by someone. Such being the case, the defendant's confession, if voluntary, became admissible to identify and connect the defendant with the crime."

Likewise in the instant case, the facts were clearly established that Mrs. Fast had indeed been beaten with sufficient force to instill fear in her; the granddaughter established that the assault occurred after she straightened up the house; that the defendants had been tenants of Mrs. Fast; that some property was removed from the house, i.e., the radio and box of pills; and that the house had been ransacked. Consequently, we must conclude, as this Court did in Raybourn v. State, supra, that the crime of robbery by

force was committed by someone; and such being the case, if the defendants' confessions were voluntarily given, they were admissible to identify and connect them with the crime charged.

The record reflects that an evidentiary hearing was had outside the presence of the jury, concerning the testimony of Officer Larry Johnson, who arrested the defendants and took their statements. Defendants' motion to suppress was overruled and Officer Johnson was permitted to testify; and, both defendants entered into a stipulation that the Miranda Rights were explained to them and that they understood those rights. Officer Johnson testified that defendant Potter was first interrogated and "stated he would cooperate . . . in the investigation . . . regarding the robbery of the victim, Mrs. Fast." In summary, Defendant Potter related to the officer that he, the codefendant, and the codefendant's brother, Roger Cartwright, had been tenants of Mrs. Fast, but had moved from the apartment; that they returned on February 6th for the purpose of robbing her of the large sum of money they thought she kept about the house; that they took the radio which they later "hocked"; but he asserted that while he and Roger Cartwright remained outside the house, Defendant Charles Cartwright actually committed the robbery; and that Charles Cartwright later informed them that he had been forced to use a club to beat Mrs. Fast.

Officer Johnson also related his conversation with Defendant Charles Cartwright, after he advised him of his constitutional rights. He related that Defendant Cartwright stated that Defendant Potter committed the robbery, and that Potter told him he used a crowbar with which he beat Mrs. Fast. The details of Defendant Cartwright's statement were very similar to those of Defendant Potter, but that he and his brother waited outside for about ten minutes, left and returned to their own apartment. He said that Potter later returned with the radio, which they had

"hocked" to Mrs. Fast about a week earlier. He contended that the last he knew of the radio, Potter had it. Most of the oral statements were later typewritten and both defendants signed their typewritten statements.

Soon after the robbery occurred, the three men left Tulsa and went to Florida. Officer Johnson testified that Defendant Potter told him that they returned to Tulsa when they learned the officers were looking for them. They were both arrested in the City of Tulsa, Oklahoma. Their voluntary return to Tulsa is the premise of defendants' objection to the instruction on flight.

After considering this record in its entirety, we conclude that the corpus delicti was properly proven, and that both defendants voluntarily gave their statements to Officer Johnson after being properly advised of their constitutional rights; and that the trial court did not commit error when defendants' demurrer and motion for directed verdict were overruled.

Defendant Potter complains that the trial court erred in refusing to give his requested instruction covering the defense of abandonment, and cites People v. Von Hecht, 133 Cal.App.2d 25, 283 P.2d 764. That case clearly recites that abandonment is a defense if an attempt to commit a crime is freely and voluntarily abandoned. However, in the instant case the crime was commenced and executed; therefore, the rule of People v. Von Hecht, supra, is not applicable to this case. Likewise, there was not sufficient evidence to warrant such instruction in accordance with the rule of Bell v. State, Okl.Cr., 381 P.2d 167 (1963). We therefore deny Defendant Potter's contention.

It is next contended that some of the prosecutor's opening and closing remarks were so prejudicial that reversible error was committed. The opening remark concerning the death of Mrs. Fast and the anticipated testimony of Dr. Fogel, who performed the autopsy on the body of Mrs. Fast, and who would testify concerning

damage to her brain as the result of the beating she received, was made in good faith. The prosecutor stated further that the state has not alleged that her death was the result of the beating, which occurred some five months earlier. For reasons not stated, the prosecutor did not call the doctor to testify. We believe the remark, having been made in good faith, did not prejudice the defendants. See: Harvell v. State, Okl.Cr., 395 P.2d 331 (1964).

■ However, the closing remarks complained of were certainly unnecessary and should not have been made. It is not the purpose of the prosecutor to comment upon the failure of any defense witnesses to testify. It is defendant's right to offer testimony, or not to offer such. This right, coupled with the passionate remark of the prosecutor when he was arguing for a sentence of fifty years, and said, "If you go to feeling sorry for them all the way and let them go, let them have this crowbar and let them have this club and put them back out on the street where they have got the ability to go hit somebody else in the head," was clearly made to arouse the passions of the jury. Defense counsel entered his objections; and even though the court was not asked to admonish the jury to disregard the remarks, we believe they were sufficient to cause modification of the sentence. See: Mitchell v. State, Okl.Cr., 408 P.2d 566 (1965), a case in which the prosecutor was chastised for similar reasons. The sentence was not modified, but only because the defendant received the minimum sentence in that case.

■ We do not accept defendants' complaints concerning the trial court's instruction on flight. The evidence supported the fact that immediately after the crime was committed the defendants did leave the City of Tulsa. No testimony was offered to explain their reasons for leaving and, notwithstanding their voluntary return, absent some explanation or other reason, the court properly instructed the jury to determine that question of fact. However, the instruction in this case continued, "You are further instructed that testimony disclosed that the defendants returned to the State before their arrest and that the arrests were made in Tulsa, Oklahoma." We are of the opinion this instruction did not constitute error. The evidence of flight arose from the defendants' signed statements, which contained all that the jury had to consider; and insofar as the statements were admitted into evidence, that question was one to be resolved by the jury. See: Smith v. State, Okl.Cr., 291 P.2d 378 (1955).

■ We deny defendants' sixth and last proposition. The officers possessed sufficient probable cause to make the arrests of the defendants under authority of Title 22 O.S.1971, § 196(3). Under the facts of this case, the arrests were lawful and no question of jurisdiction of the court exists.

■ We are therefore of the opinion that the convictions of Defendants Ernest Lee Potter and Charles William Cartwright, in the District Court of Tulsa County, Case No. CRF–72–518, should be affirmed; however, because of the prejudicial and inflammatory remarks made by the prosecutor in his closing argument, the sentence is hereby modified from thirty (30) years imprisonment to twenty (20) years imprisonment, and as modified the judgment and sentence is affirmed.

BLISS, P. J., and BUSSEY, J., concur.